James H. Hunt, Petitioner *v.* Commonwealth of Pennsylvania, Department of State, Pennsylvania State Board of Funeral Directors, Respondent.

Argued April 6, 1979, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Paul D. Nelson,* for petitioner.

*Lenora M. Smith,* Assistant Attorney General, with her *Gerald Gornish,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, September 4, 1979:

James H. Hunt (appellant) appeals here from an order of the Pennsylvania State Board of Funeral

Directors (Board) which suspended his funeral director's license for 90 days. He was charged with violating the Board's Regulation 13.184[1] which requires that a signed "disclosure form" be executed prior to the disposition of the body of a deceased person, and, in so doing, of violating the Funeral Director Law[2] (Law).

The appellant was a Delaware County Assistant Coroner at the time of the alleged violation, and the record indicates that in the course of his official duties as deputy coroner he was summoned by a hospital to pick up the corpse of the husband of Mrs. Estella Gordon and to deliver it to the Delaware County morgue. At approximately midnight of the same evening, he went to the home of the deceased, apparently to speak with Mrs. Gordon. No one being present there, he left his calling card in the door with a notation "please give me a call." This card identified him both as a funeral director and as a deputy coroner. The following day he succeeded in contacting Mrs. Gordon and arrangements were made for her to meet him at his funeral home where he also had several additional meetings with her and various other family members. As a result of these meetings he claims that arrangements were made for him to procure the body of the deceased from the morgue and to prepare it for burial, and casket and church selections were then made by the family. Mrs. Gordon testified, however, and the Board found, that at no time did she give the appellant express permission to obtain the body from the morgue and to embalm it. The appellant testified that, prior to performing any services

---

[1] 49 Pa. Code §13.184. The regulations have been subsequently amended in part and therefore this section of these regulations is presently found at 49 Pa. Code §13.204.

[2] Act of January 14, 1952, P.L. (1951) 1893, *as amended*, 63 P.S. §479.1 et seq.

with respect to the body, he reviewed with the family an itemized list of services to be rendered and the charges therefor. The Board found that Mrs. Gordon, however, had not engaged in the decision-making process although she was aware of what was transpiring in her presence, which the Board found could be "equated to" a passive acceptance of those arrangements.

During the two days ensuing after these meetings, Mrs. Gordon notified the appellant that she wanted another funeral director to perform the funeral services, and the appellant released the body after receiving $350.00 for the services he had thus far rendered. At that time no disclosure form had yet been signed. The Board concluded that the appellant had violated Board Regulation 13.184 and the Funeral Director Law in failing to have the disclosure form signed prior to embalming and in failing to have it signed prior to releasing the body to the other funeral director.

The appellant argues here that the facts as found by the Board do not as a matter of law constitute a violation of Regulation 13.184 and alternatively that, if they do, the violation is not of such magnitude as to warrant a 90-day suspension of his license under the Funeral Director Law.

Regulation 13.184 provided as follows:

*A written agreement form,* approved by the Board, containing the name and address of the funeral director, the deceased name and date of death, and a specific listing of all professional services, merchandise, facilities and equipment to be supplied by the funeral director for the preparation and burial, cremation, or other disposition of the deceased, an itemized statement of cash advances and expenditures, together with a total cost, signed by the funeral director,

*shall be given to the family representative* arranging for the funeral *prior to the disposition of the deceased.* A copy of this agreement, *signed by the family representative,* shall be retained by the funeral director along with all other records of the transaction for a period of at least six years and shall at all times be open to inspection by the Board or its designee. It is the duty of the funeral director to fulfill the representations of the agreement in every detail. (Emphasis added.)

49 Pa. Code §13.184.

We believe that this regulation clearly requires a disclosure form to be given to the family representative of a deceased person prior to the disposition of the deceased's body and furthter requires that a copy of this written agreement disclosure form signed by the family representative must then be retained by the funeral director.[3] The issue therefore is, at what stage in the funeral arrangement process must this form be *signed*?

The term "disposition" is not defined in this regulation or in the Law, but the regulation speaks in

---

[3] In a prior case, *State Board of Funeral Directors v. Cieslak,* 24 Pa. Commonwealth Ct. 315, 355 A.2d 590 (1976), this Court was called upon to interpret and apply the predecessor to this Regulation 13.184 which provided that a funeral director "should" retain a copy of the written statement. We held that such language was not mandatory and therefore no violation of the Law could be based on the failure to keep such copies. We note that the Board later amended the applicable regulation, using the term "shall".

The new regulation specifically requires the written agreement form to be given to the family representative or agency official arranging for the funeral *at the time of arrangements* which must be prior to the disposition of the deceased. 49 Pa. Code §13.204(a). The new regulations fail to specifically state when a signature is required but merely reiterates that a "copy of the written agreement, signed by the family representative . . . shall be retained by the funeral director. . . ." 49 Pa. Code §13.204(g).

terms of services, mechandise, facilities and equipment supplied for the "preparation and burial, cremation, or other disposition of the deceased." The appellant argues that the signature is required therefore only some time prior to disposition of the body, which means prior to burial or cremation, not prior to embalming. He notes that another funeral director disposed of the body in this case, and so maintains that it was this other funeral director, not he, who engaged in a "disposition" of the body necessitating a signed agreement. He argues also that he actually complied with the regulation, however, because he reviewed his itemized list of services to be rendered by him and the charges to be made therefor with the family, prior to doing any embalming. On the other hand, the Board maintains that the regulation requires the signature prior to embalming and it explained in its opinion that the requirement of the preparation and signing of the written agreement form was designed to eliminate confusion by assuring that every client is informed of and agrees to the rendering of all services prior to their performance. Embalming, of course, is a necessary service, and the object of the regulations would clearly not be served if embalming were to be performed before a signed and written agreement were to be obtained. Awaiting such signature may present problems because of the time demands of embalming a body within 24 hours of death,[4] but we believe that the

---

[4] Regulation 13.211 provides as follows:

13.211. Embalming within 24 hours.

(a) Any human remains held 24 hours beyond death shall be embalmed or sealed in a hermetically sealed container that will not allow fumes or odors to escape or shall be kept under refrigeration; provided, however, that this does not conflict with any religious belief or medical examination.

(b) Any human remains kept under refrigeration over the 24-hour period beyond death must be maintained at a

regulation requires the signature prior to embalming, and the Board's finding of a violation as to the requirement of the regulation will be affirmed.[5]

temperature level not to exceed a maximum of 30°F. Human remains kept under refrigeration must be buried, cremated, or entombed within a period of five hours following removal from such refrigeration.

49 Pa. Code §13.211.

[5] In most cases of bereavement, certainly funeral directors are aware that the family members responsible for handling funeral arrangements may well be under tremendous emotional pressures, and misunderstandings may easily occur. In this case, moreover, the appellant was originally involved as a deputy coroner. We note that Regulation 13.209 now provides:

After having been called upon to remove the remains from the scene of an accident or comparable situation, a funeral director shall incur no expense beyond that for the removal unless, after reasonable effort, the family of the deceased cannot be contacted. Once such contact is established, the funeral director in the circumstances set forth in this section shall, in the most expeditious manner possible, release the remains to the funeral director of the choice of the family.

49 Pa. Code §13.209.

While he may have honestly thought that the family had chosen him to handle the funeral arrangements, clearly Mrs. Gordon was the family representative primarily responsible for making such arrangements for her deceased husband and he knew that she had signed no consent. If he sensed any confusion, it was his responsibility to await her final decision under Regulation 13.207 which specifically provides as follows:

Any funeral director who finds that he is involved in a situation where a family group is divided concerning the choice of a funeral director shall withdraw until the family has made a final decision. Under such circumstances, any attempt by the funeral director to influence the judgment of the family shall be unprofessional conduct.

49 Pa. Code §13.207.

A signed written agreement form would obviously have served to protect him from any misunderstanding as to whom she wanted to serve as the funeral director, and would further serve to prevent unauthorized actions.

The appellant argues also that the Board erred in finding that he had committed an additional violation of the regulation in releasing the body of the deceased to another funeral director without a signed written agreement form. This action in itself, we believe, did not constitute "disposition of the body" and so did not require a signature. As to this finding of the Board, therefore, we would disagree and it will not be affirmed.

The appellant further maintains that if he did violate the regulation, the violation was not of such magnitude as to warrant a 90-day suspension of his license, and he cites the case of *D'Anjolell v. State Board of Funeral Directors,* 3 Pa. Commonwealth Ct. 64, 280 A.2d 123 (1971). There a funeral director failed to give the family a written statement of services prior to the deceased's burial as required under the old Regulation 16.3 (predecessor to Regulation 13.184) and this Court held there that the mere failure to provide a preinternment bill was not a violation of such magnitude as to warrant license suspension. The facts of the case at hand, however, are easily distinguishable. The appellant's conduct here can be viewed not only as more than a mere technical violation of the regulations but as conduct which involved a disregard of the generally accepted canons of ethics and propriety governing the appellant's role as a funeral director. The Board here believed that his conduct was such as to warrant a 90-day suspension, and we see no abuse of discretion in that conclusion. The Board must be allowed a large degree of latitude in determining what constitutes "misconduct" under its regulation, *Beatty v. State Board of Undertakers,* 352 Pa. 565, 568, 43 A.2d 127, 128 (1945); *State Board of Funeral Directors v. Cieslak,* 24 Pa. Commonwealth Ct. 315, 319, 355 A.2d 590, 593 (1976); *McKinley v. State Board of Funeral Directors,* 11 Pa. Common-

wealth Ct. 241, 248, 313 A.2d 180, 184 (1973), and we would be reluctant to substitute our judgment for that of the Board required as it is to police its own profession. Furthermore, it is well recognized that the courts should proceed with caution where the judgment of an administrative body properly interpreting its own regulation is at issue. *Commonwealth v. Beck Electric Construction, Inc.,* Pa. , 403 A.2d 553 (1979); *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 276, 318 A.2d 910, 917 (1974).

With the exception, therefore, of the Board's finding that the regulation here in question was violated by the appellant in releasing the body to another funeral director, we will affirm the other findings and the order of the Board that the license of the appellant be suspended for 90 days.

ORDER

AND Now, this 4th day of September, 1979, consistent with this opinion, the order of the State Board of Funeral Directors in the above-captioned matter is hereby affirmed.