Andrew D. FERGUSON, III, Petitioner,

v.

**PENNSYLVANIA STATE BOARD OF FUNERAL DIRECTORS, Respondent.**

**Faye Morey, Petitioner,**

v.

**Pennsylvania State Board of Funeral Directors, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2000.

Filed Feb. 5, 2001.

---

394

Richard L. Dahlen, Hummelstown, for petitioner.

Thomas A. Blackburn, Harrisburg and Gordon W. Gerber, Philadelphia, for respondent.

P. Kevin Brobson, Harrisburg, for amicus curiae, College Life insurance Company.

Before FRIEDMAN, Judge, KELLEY, Judge, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Andrew D. Ferguson, III (Ferguson) petitions for review from the April 6, 2000 order of the Pennsylvania State Board of Funeral Directors (Board) that suspended his funeral director's license for a period of two years and levied a civil penalty against him in the amount of $4,000.00 for four violations of Section 11(a)(5) of the Funeral Director Law (Law).[1,2] Section 11(a)(5) provides that the Board may suspend any licensee for "gross incompetency, negligence or misconduct in the carrying on of the profession." 63 P.S. § 479.11(a)(5). Ferguson's suspension, the origin of which is that he aided and assisted insurance agents in the unlicensed practice of funeral

---

1. Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. § 479.11(a)(5).

2. The Board stayed the suspension of Ferguson's license in favor of two years probation, subject to various conditions.

directing, was dependent upon the Board's decision that Faye Morey (Morey) violated the Law.[3]

Morey petitions for review from the October 4, 2000 order of the Board that ordered her to cease and desist from all sales activity involving pre-arranged funeral merchandise and services and levied a civil penalty against her in the amount of $4,000.00 for four violations each of Sections 13(a) and 13(c) of the Law. Section 13(a) provides that "[n]o person shall practice as a funeral director as defined herein, . . . unless he holds a valid license to do so as provided in this act." 63 P.S. § 479.13(a). Section 13(c) provides, in pertinent part, that "no person other than a licensed funeral director shall, directly or indirectly, or through an agent, offer to or enter into a contract with a living person to render funeral services to such person when needed." 63 P.S. § 479.13(c). For the reasons that follow, we affirm both Board orders.[4]

Ferguson is a licensed funeral director. In early 1996, Baltimore Life Insurance Company (Baltimore Life) contacted Ferguson for the purpose of sponsoring a funeral planning survey. Baltimore Life conducted the survey, mailed it out to prospective clients and reviewed all responses to it. Ferguson did not participate in the survey directly; rather, he allowed Baltimore Life to use his funeral home name on the survey's letterhead.

Baltimore Life employed Clara Kendall as a life insurance agent and directed her to sell pre-arranged funerals. Baltimore Life hired Morey to train its agents to sell pre-arranged funerals in Uniontown, Pennsylvania. Morey worked with Kendall.

In March of 1996, Kendall and Morey met with Ferguson, whereupon Ferguson agreed to accept assignments of Baltimore Life insurance policies that Kendall and Morey sold for pre-arranged funerals. At this meeting, Ferguson supplied Morey with his price lists and some pictures of his merchandise.

Thereafter, Kendall and Morey met with potential insureds that had responded to the funeral planning survey. Ultimately, Kendall and Morey sold four policies for pre-arranged funerals.[5] In determining the amount of insurance required to fund a pre-arranged funeral, Kendall and Morey completed "Estimated Worksheets" for each insured. The Estimated Worksheets listed charges for funeral services, caskets, vaults, memorials, obituaries, death certificates, the opening and closing of cemetery plots, clothing, hairdresser, minister/mass, crucifixes, stone/memorial installation and other miscellaneous charges (for example, flowers or luncheons). Kendall or Morey signed the Estimated Worksheets as "counselor" rather than as "insurance agent."

Based upon the figure projected in the Estimated Worksheets, Kendall and Morey sold insurance policies to the insureds in an amount sufficient to cover the costs of the funerals. Kendall and Morey then had the insureds assign their policies to Ferguson. Thereafter, Kendall and Morey presented the insurance policy assignments to Ferguson, which were accepted by him. In some instances, the prices projected by Kendall and Morey were

---

3. Morey argued before the Board that it had prejudged the merits of her case since the Board issued its adjudication concluding that Ferguson aided and assisted in the unlicensed practice of funeral directing on April 6, 2000, and the hearing to determine whether Morey engaged in the unlicensed practice of funeral directing did not occur until May 2, 2000. This argument, however, was not raised on appeal.

4. By order dated October 12, 2000, we granted Ferguson's application for consolidation of the two appeals.

5. Policies were sold to Mary Ellen Bittinger and her sister, Goldie Bittinger, Frances Maust and William Wilson. The insureds did not testify before the Board and it does not appear that they were dissatisfied with their respective policies or the manner in which they were serviced.

slightly higher than those charged by Ferguson; however, Ferguson did not discuss that aspect with either Kendall or Morey.

Upon receiving the assignments and without prior consultation with the insureds, Ferguson proceeded to prepare a Statement of Funeral Goods and Services (Statement) for each insured. He then visited the insureds to obtain their signatures on their respective Statements.

On February 16, 1999, the Board issued a Notice and Order to Show Cause against Ferguson, alleging that he had violated Section 11(a) of the Law by aiding and assisting Kendall and Morey in the unlicensed practice of funeral directing. Ferguson filed an answer on April 6, 1999 and a formal hearing was held before the Board on November 10, 1999.

Similarly, on December 6, 1999, the Board issued an Amended Notice and Order to Show Cause against Morey, alleging that she had violated Sections 13(a) and (c) of the Law by engaging in the unlicensed practice of funeral directing.[6] Specifically, the Board averred that Morey made financial arrangements for the rendering of funeral services and the sale of funeral merchandise incidental to the sale of funeral services. Morey filed an answer on December 8, 1999 and a formal hearing was held before the Board on May 2, 2000.

In the interim, the Pennsylvania Funeral Directors Association (PFDA)[7] petitioned to intervene in both matters on January 20, 2000 and the Board granted both petitions.[8] Ferguson and Morey thereafter each filed a motion to dismiss their respective Notices and Orders to Show Cause, claiming that a Board resolution dated September 1, 1999 demonstrated that the Board had prejudged both cases. Both motions were denied.

On April 6, 2000, the Board issued an adjudication in which it concluded that Ferguson had violated the Law by aiding and assisting Morey and Kendall in the unlicensed practice of funeral directing. Accordingly, the Board suspended Ferguson's license for a period of two years and levied a $4,000.00 civil penalty against him.

On October 4, 2000, the Board issued an adjudication in which it concluded that Morey had violated the Law by engaging in the unlicensed practice of funeral directing by making financial arrangements for funeral services and merchandise. Accordingly, the Board ordered that Morey cease and desist from all activities related to the sale of pre-arranged funeral services and merchandise and levied a $4,000.00 civil penalty against her.

In our ensuing discussion, we are mindful that our courts have long recognized that the General Assembly has a legitimate interest in regulating the funeral industry to safeguard the interests of

---

6. Kendall was likewise charged with violating the Law. The records before us do not reveal the Board's specific charges against Kendall. The Morey Adjudication makes known, however, that the Board approved a consent agreement between Kendall and the Commonwealth on November 10, 1999 in which Kendall admitted to violating the Law and agreed to pay a civil penalty. (Morey Adjudication dated October 4, 2000, p. 2, n. 5) We further note that the record does not indicate whether Baltimore Life, as the agents' employer, was charged with violating the Law.

7. PFDA is an intervenor in the above-captioned cases before this Court. As PFDA represented in its petition to intervene before the Board in the Ferguson case, PFDA is a non-profit trade association of funeral directors, which represents the professional interests of more than 1200 funeral home members and licensed funeral directors throughout the Commonwealth. (Ferguson Reproduced Record "Ferguson R.R." 231a)

8. *See* Section 12(b) of the Law, 63 P.S. § 479.12(b) ("[a]ny association of funeral directors or any party in interest shall be entitled to be heard by the board in any proceedings under the Administrative Agency Law [2 Pa.C.S. §§ 501–508, 701–704].") We further note that because PFDA did not intervene in the Ferguson proceeding until after the Board held its hearing, PFDA merely submitted briefs to the Board in support of its position. In Morey, however, PFDA actively participated before the Board in addition to submitting briefs.

the public and the standards of the profession. *See generally Donato v. State Board of Funeral Directors*, 168 Pa.Cmwlth. 177, 649 A.2d 207 (1994). Moreover, the General Assembly has empowered the Board to formulate necessary rules and regulations not inconsistent with the Law for the proper conduct of the business and profession of funeral directing. Section 16 of the Law, 63 P.S. § 479.16. Thus, the Board must be given deference in the interpretation of its rules and regulations. *McKinley v. State Board of Funeral Directors*, 11 Pa.Cmwlth. 241, 313 A.2d 180 (1973).[9]

## I. Morey appeal[10]

We begin by addressing Morey's appeal, for logic dictates that the Board had to conclude that Morey engaged in the unlicensed practice of funeral directing in order to conclude that Ferguson aided and assisted in the prohibited activity. Morey, in her statement of issues on appeal, asks us to consider only whether a) an insurance agent may be held liable for the unlicensed practice of funeral directing, when at the time of the activity, there was no clear statement of law providing that the sale of insurance policies to fund pre-arranged funerals constituted the unlicensed practice of funeral directing and b), the Board had jurisdiction to determine whether an insurance agent is liable for the unlicensed practice of funeral directing

based on the sale of insurance policies to fund pre-arranged funerals.

**Whether an insurance agent may be held liable for the unlicensed practice of funeral directing, when at the time of the activity, there was no clear statement of law providing that the sale of insurance policies intended to fund pre-arranged funerals constituted the unlicensed practice of funeral directing.**

Morey contends that at the time of her activities in 1996, there was no clear indication by the Board that the practice of selling insurance policies to fund pre-arranged funerals constituted the unlicensed practice of funeral directing. In fact, she alleges that from 1991 through 1996, PFDA gave funeral directors the option of marketing funeral insurance through a funeral director and a licensed insurance agent and that therefore, PFDA's past practices endorses her conduct.[11]

Initially, we note that the Board rejected Morey's argument that PFDA's past activities somehow endorsed her conduct. Specifically, the Board stated as follows:

Assuming for the sake of argument only that the actions of a voluntary professional association can establish what is or is not in compliance with statutory law, the evidence adduced at hearing does not support [Morey's] argument. The PFDA plan required that persons who would participate to sell life insur-

9. On review, we are limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the necessary findings of fact are supported by substantial evidence. *Kleese v. Pennsylvania State Board of Funeral Directors*, 738 A.2d 523 (Pa.Cmwlth.1999), *appeal denied*, 562 Pa. 676, 753 A.2d 822 (2000).

10. Pursuant to Pa. R.A.P. 531, three amicus curiae briefs were filed in support of the appeals. The briefs were filed on behalf of the Pennsylvania Cemetery and Funeral Association, the Catholic Family Security Association and College Life Insurance Company and have been given due reflection.

11. From 1995 through 1997, PFDA lent its name and efforts to the Pennsylvania Funeral Plan. The Plan was used to sell funerals and

it incorporated the sale of life insurance policies to fund the funerals. (Morey Reproduced Record "Morey R.R." 207a–208a) Apparently, this practice was stopped because the funeral industry was not generating revenue from it. (*Id.* at 240a) John Eirkson, Executive Director of PFDA, testified that everyone directly employed by PFDA who sold funerals and life insurance policies were licensed funeral directors *and* life insurance agents. (*Id.*) He further stated that some insurance agents did receive commissions from PFDA but that they were employed by individual funeral homes. (*Id.*) If that was the case, then the usual sequence of events was that the funeral home would arrange the funeral and the life insurance agent would draw up an application for insurance to fund the funeral. (*Id.* at 239a)

ance to fund [pre-arranged] funeral contracts **must be** licensed as life insurance agents and licensed as funeral directors. PFDA contracts with funeral homes to engage in these [pre-arranged] sales required that the funeral homes would market the plan only by a licensed funeral director ,and a licensed insurance agent. Such a requirement is entirely consistent with the Board's holding in this matter and in the *Ferguson* matter: only licensed funeral directors may engage in [pre-arranged] sales of funeral goods and services.

(Morey Adjudication, pgs. 13–14) (citations omitted; emphasis in the original)

We agree with the Board. Clearly, Morey's conduct in her capacity as a licensed insurance agent only is highly distinguishable from PFDA's past conduct. Thus, we find her argument in that regard to be irrelevant. In any event, our relevant query here, as it must be, is whether the Board erred in determining that Morey's conduct constituted the unlicensed practice of funeral directing.

Section 15(1) of the Law, 63 P.S. § 479.15(1), defines the term "practice." It states:

A person, either individually or as a member of a partnership or of a corporation, shall be deemed to be practicing as a funeral director within the meaning and intent of this act who:

(1) holds himself out to the public in any manner as one who is skilled in the knowledge, science and practice of funeral directing, embalming or undertaking, or who advertises himself as an undertaker, mortician or funeral director.

With regard to its charges that Morey engaged in the unlicensed practice of funeral directing, the Board made the following relevant findings of fact: 1) Morey does not hold a license to practice as a funeral director in the Commonwealth of Pennsylvania; 2) Baltimore Life employed Morey to train its insurance agents in the sale of life insurance policies to fund pre-arranged funerals; 3) Morey met with Ferguson, who agreed to accept assignment of any life insurance policies sold by her; 4) Ferguson gave Morey a copy of his price list; 5) Morey met with potential insureds, stating that she worked with or was in association with Ferguson's funeral home; 6) Morey met with four individuals who ultimately purchased life insurance policies to fund pre-arranged funerals and in each instance, a) prepared an Estimated Worksheet, specifically listing charges for funeral services, caskets and vaults (models identified), newspaper listings, death certificates, cemetery opening and closing, ministers/mass, hairdresser, flowers (with florist identified and description of flower arrangement) and luncheon (location identified), b) estimated the total cost of funeral services and merchandise, and c) signed the Estimated Worksheet as "counselor" rather than "insurance agent;" 7) Morey sold life insurance policies to the four insureds to cover the cost of the pre-arranged funerals and then presented an irrevocable assignment to Ferguson for acceptance; and 8) Ferguson prepared Statements of Goods and Services based on the Estimated Worksheets completed by Morey and Kendall. (Morey Adjudication, Findings of Fact Nos. 1, 7, 8, 9, 10, 12, 13, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 46, 47, 49)

■ Based upon the Board's findings, which are supported by the record, we agree with the Board that Morey's actions constituted the "practice" of funeral directing in violation of Sections 13(a) and (c) of the Law. She appeared before the insureds, armed with literature from various funeral homes (and specifically, the Ferguson funeral home), and assisted them as a "counselor" rather than an "insurance agent" in the selection of funeral services and merchandise. "Counselor" is defined as "one that counsels: ADVISOR", or as "one who engages in or whose profession is counseling." Webster's Ninth New Inter-

national Dictionary 518 (1993). By her own testimony, Morey indicated that she advised the insureds that she worked "in association with" funeral homes. She then proceeded to assist and advise them in selecting funeral merchandise.

Given the fact that there are various manufacturers and models of funeral merchandise, it would be unreasonable to presume that Morey did not engage in funeral directing when she handed over the price lists to the insureds. Such a presumption assumes that the insureds blindly selected the desired services and merchandise with no discussion as to the benefits and drawbacks of the available options. In essence, as a "counselor," the record indicates that Morey helped the insureds plan and fund their funerals, including funeral services, in all aspects.[12] By assisting the insureds in the selection of funeral merchandise, Morey held herself out to the public as one skilled in the knowledge of funeral directing. As the Board stated, "Section 13(c) very clearly limits these discussions with customers to licensed funeral directors. By training and experience, and with Board regulatory oversight, licensed funeral directors are qualified to assist individuals with pre-arranging their funerals." (Morey Adjudication, p. 11, n. 8)

Moreover, the term "funeral director," in relevant part, is defined to include "a person who makes arrangements for funeral services and who sells funeral merchandise to the public incidental to such services or who makes financial arrangements for the rendering of such services and the sale of such merchandise." Section 2(1) of the Law, 63 P.S. § 479.2(1). Clearly, Morey's acts of entering into a contract for life insurance to fund funerals and effectuating the assignment of the policies to Ferguson constitutes "making financial arrangements" for funeral services and merchandise.

■ In addition, Morey's actions of aiding the insured in the selection of funeral goods and services and preparing worksheets for each insured constituted offering to enter into a contract with the insured for funeral goods and services, when needed, in violation of Section 13(c) of the Law. As the Board points out, Section 13(c) does not permit a licensed funeral director to offer pre-arranged services through unlicensed employees. Further, the Board notes that Section 13(d) of the Law specifically authorizes unlicensed employees of funeral homes to make tentative arrangements *at the time of need* if the licensed funeral director is temporarily absent. 63 P.S. § 479.13(d). Obviously, the General Assembly knew how to approve the actions of unlicensed persons in the area of funeral law when it wanted to do so. Significantly, it did not do so with regard to Section 13(c). *See* Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *USX Corp. v. Workers' Compensation Appeal Board (Rich),* 727 A.2d 165 (Pa.Cmwlth.1999), *aff'd sub nom. LTV Steel Co. v. Workers' Compensation Appeal Board (Mozena),* 562 Pa. 205, 754 A.2d 666 (2000) (where certain things are specifically designated in a statute, all omissions should be understood as exclusions).

■ Furthermore, the fact that Ferguson ultimately prepared Statements of Goods and Services for the customers' signatures based on Morey's estimated worksheets, did not vitiate the unlawful nature of Morey's conduct. As PFDA points out, Section 13(c) does not provide that the contract must be accepted or complete, but merely that it be offered. Here, it is implicit that the insureds thought that

---

**12.** We reject the argument that taken to its logical extension, any individual, including one's children and minister, who assists another in the planning of a funeral is in violation of the Law. Unlike an insurance agent who determines the amount of insurance needed to fund the funeral (and hence, the profit to the insurance company), ministers and children do not have a direct financial interest in the selection of funeral arrangements and do not enter into contracts to render funeral services when needed.

they were purchasing funerals from Morey given her designation of herself as counselor, provision to the insureds of all of Ferguson's data, including pictures of certain items, and representation that she worked with or was in association with Ferguson.

■ Morey further contends that the Law is unconstitutionally vague because it does not offer a clear statement of the activities that are prohibited as the unlicensed practice of funeral directing. Citing *Watkins v. State Board of Dentistry*, 740 A.2d 760 (Pa.Cmwlth.1999), Morey maintains that the Law is vague since it does not offer a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he may act accordingly. We disagree.

To reiterate, the Law prohibits an individual from holding himself out in any matter as one who is skilled in the knowledge or practice of funeral directing. Section 15(1) of the Law, 63 P.S. § 479.15(1). Knowledge is "the fact or condition of knowing something with a considerable degree of familiarity gained through experience of or contact or association with the individual or thing so known." Webster's Ninth New International Dictionary 1252 (1993). Although the term "funeral directing" is not defined by the Law, the term "funeral director" is defined as a "person who makes arrangements for funeral service and who sells funeral merchandise to the public incidental to such service or who makes financial arrangements for the rendering of such services and the sale of such merchandise." Section 2(1) of the Law, 63 P.S. § 479.2(1).

We conclude that the Law is clear: it prohibits persons other than licensed funeral directors from 1) engaging in discussions with individuals regarding the selection of funeral services, 2) offering to enter into a contract for funeral goods and services when needed and 3), making financial arrangements for the sale of funeral ser-

vices and merchandise incidental to those services. The terms are not vague.

**Whether the Board has jurisdiction to determine whether an insurance agent is liable for the unlicensed practice of funeral directing based on the sale of insurance polices to fund pre-arranged funerals.**

■ Morey argues that the Board's regulation of the sale of life insurance intended to fund pre-arranged funerals goes beyond the Board's jurisdiction as prescribed by the Law. We certainly agree with Morey that the Board does not have jurisdiction over the sale of insurance products. The Board does, however, have jurisdiction to oversee and to ensure the proper conduct of the business and profession of funeral directing. To the extent that Morey was practicing as an unlicensed funeral director, the Board was obligated and empowered to take action.[13]

To clarify, we do not hold in this opinion that insurance agents who do not also happen to be licensed funeral directors cannot sell insurance policies meant to fund future funerals. Such a holding would be far beyond the purview of this opinion and is not really at issue in this case. What happened here was that an insurance agent sold such policies while at the same time holding herself out as one who is skilled in the knowledge and practice of funeral directing.

What we do hold and what the Board determined is that insurance agents may not usurp the legislatively mandated role of funeral directors. In order to safeguard the interests of the public, the General Assembly preserved certain roles for licensed funeral directors as defined in the Law and as regulated by the Board. We note that it obviously would be very helpful to an insured wishing to pre-arrange his funeral to know the cost of a funeral of his choice. Nothing in this opinion pre-

---

**13.** As the Board noted, "[l]icensure laws exist to protect the public from unlicensed persons; by definition, their qualifications for practice have not been established, and the Board has no regulatory oversight over them." (Ferguson Adjudication, dated April 6, 2000, p. 13)

vents an insured from purchasing such an insurance policy. Simply, if he wishes to have a precise idea of the costs involved, he must consult the source of funeral merchandise and services, the funeral director, in order to ascertain the costs and the ramifications of some of the more technical choices available.[14] As set forth in the Law, such is the will of the General Assembly.

To reiterate, Morey represented to the insureds that she worked "in association" with Ferguson and then proceeded to assist the insureds in the selection of funeral services and merchandise. She "counseled" the insureds during the process, which resulted in financial arrangements for funeral services. Morey's conduct demonstrated that she held herself out to be knowledgeable in the practice of funeral directing or planning and that she made financial arrangements for funeral services. By presenting all of the paperwork to the insureds, she offered to enter into a contract for pre-arranged funerals. The clear language of the Law and Morey's conduct supports the Board's conclusion that Morey engaged in the unlicensed practice of funeral directing.

■■■ Morey also maintains that there is a distinction between funeral "services" and funeral "merchandise," and claims that the Board is without authority to regulate the sale of funeral "merchandise." Our review of the Board's adjudication reveals, however, that Morey did not raise this issue before the Board. An issue not raised below is deemed waived on appeal. Pa. R.A.P. 1551(a) (no question shall be heard or considered by the court that was not raised before the government unit).

Notwithstanding our conclusion that Morey waived the issue, we note that while the distinction between funeral "services" and funeral "merchandise" may be valid, it does not afford Morey relief. Funeral "services" generally relate to the use of the funeral home, its staff and its equipment (including professional memorial and graveside services, embalming, cremation, cosmetology/hair, viewing/visitation, transfer of the deceased to funeral home, hearse and service car, etc). *See* National Funeral Director Association Homepage, *www.nfda.org/resources/99.* Funeral "merchandise" generally relates to caskets, vaults and acknowledgment cards. *Id.* Morey prepared "Estimated Worksheets" that listed the prices for funeral "services" in addition to "merchandise" and sold insurance policies that included funds necessary to cover the cost of funeral "services."

Although in *Pennsylvania Funeral Directors Ass'n v. State Board of Funeral Directors,* 90 Pa.Cmwlth. 175, 494 A.2d 67 (1985), *aff'd,* 510 Pa. 602, 511 A.2d 763 (1986), we recognized that funeral merchandise can be provided by vendors, Morey certainly did not offer to provide such merchandise. Rather, she made the financial arrangements to cover the cost of the merchandise selected. Sections 2(1) and 13(c) of the Law, 63 P.S. § 479.2(1) and § 479.13(c), specifically prohibit individuals other than licensed funeral directors from making financial arrangements for funeral services and from selling or making financial arrangements for the sale of funeral merchandise incidental to those services.

Accordingly, based upon the issues presented for review and our examination of the record before us, we affirm the Board's

---

14. In an attempt to set forth practical guidelines for funding funerals through life insurance, the Board stated that the Law

does not prohibit insurance agents from selling life insurance to fund pre-arranged funerals. For example, a funeral director may meet with an individual desiring to [pre-arrange] the funeral. Once final arrangements have been made, an insurance agent can then be brought in, knowing the

amount of insurance necessary to fund the agreement. Alternatively, an insurance agent could meet with a customer, using average prices for generalized funeral services and merchandise. Such would not create the impression that the insurance agent is selling anything other than insurance.

(Ferguson Adjudication, p. 12 n. 10)

October 4, 2000 adjudication concluding that Morey violated the Law by engaging in the unlicensed practice of funeral directing.

## II. Ferguson Appeal

In his statement of issues on appeal, Ferguson raises three issues for our consideration: a) whether a funeral director may be liable for aiding and assisting in the unlicensed practice of funeral directing when his conduct consisted of the lawful distribution of price lists and the conduct of the party allegedly aiding him consisted of the lawful estimation of prices for funeral merchandise, b) whether a funeral director may be held liable for conduct that was not prohibited until after the conduct occurred and c), whether a funeral director may be held liable where the finding of liability was announced prior to the Board's hearing on Ferguson's Notice and Order to Show Cause. We will address the issues *seriatim.*

**Whether a funeral director may be held liable for aiding and assisting in the unlicensed practice of funeral directing when his conduct consisted of the lawful distribution of price lists and the conduct of the party allegedly aiding him consisted of the lawful estimation of prices for funeral merchandise.**

In his first argument on appeal, Ferguson maintains that a funeral director may not be held liable for aiding and assisting in the unlicensed practice of funeral directing where his conduct consisted of the lawful distribution of his price lists. As previously noted, Ferguson distributed his price lists to Kendall and Morey at their March 1996 meeting.

Section 11(a)(5) of the Law, 63 P.S. § 479.11(a)(5), states that

[t]he Board, by a majority vote thereof, may refuse to grant, refuse to renew,

suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:

. . .

5) Gross incompetency, negligence or misconduct in the carrying on of the profession.

Section 13.202 of the Board's regulations provides that "unprofessional conduct" includes "[a]iding and assisting ... an unlicensed person to engage in an act or practice for which a license is required." 49 Pa. Code § 13.202.

In 1995, the Federal Trade Commission interpreted Section 453.2(b) of Title 16 of the Code of Federal Regulations, commonly known as the Funeral Rule, to require that funeral directors provide a general price list to "all persons who inquire about funeral arrangements." (Ferguson R.R. 214a; 219a–220a) This may include competitors, journalists and representatives of businesses, religious societies, government agencies or insurance groups. (*Id.* at 219a–220a) Thus, Ferguson maintains that the Board cannot restrict his federally mandated duty to distribute his price lists to anyone who asks and that therefore, he cannot be held liable for aiding and assisting in the unlicensed practice of funeral directing based on this conduct.[15]

 The Board does not dispute that Ferguson must abide by the Funeral Rule and distribute his price lists to those who ask. We agree with the Board's position, however, that it is the totality of Ferguson's conduct that constituted the aiding and assisting in the unlicensed practice of funeral directing. Simply said, he did more than deliver his price lists.

The Board found as fact that 1) Ferguson met with Kendall and Morey in March of 1996, 2) he agreed to accept assignment

---

**15.** In addition, Ferguson maintains that the distribution of his price lists is constitutionally protected commercial speech. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Hospitality Inv. of Philadel-* *phia, Inc.,* 547 Pa. 142, 689 A.2d 213 (1997)(striking down the prohibition of price advertising of liquor). The Board does not dispute this proposition.

of any insurance policies Kendall and Morey sold for pre-arranged funerals, 3) he held a meeting with other local funeral directors to inform them of what Baltimore Life was doing, 4) he accepted four irrevocable assignments of insurance policies sold by Kendall and Morey, 5) he prepared four Statements of Funeral Goods and Services based on the Estimated Worksheets prepared by Kendall and Morey, 6) he presented the Statements for signature to the insureds without prior consultation with them and 7), he provided Kendall and Morey with pictures of his caskets. (Ferguson Adjudication, Findings of Fact Nos. 11, 12,15, 20, 21, 25, 26, 31, 33, 38, 39, 41)

The Board's conclusion that Ferguson aided and assisted Kendall and Morey in the unlicensed practice of funeral directing is based on his conduct as a whole and not on the distribution of his price lists. Through his price lists, he enabled Morey and Kendall to engage in funeral directing. Similarly, the Board's conclusion that Morey engaged in the unlicensed practice of funeral directing is not based on her sale of life insurance policies to fund the purchase of funeral goods and services. Among other things, she "counseled" individuals as to their selection of merchandise and services.

**Whether a funeral director may be held liable for conduct that was not prohibited until after the conduct occurred and whether a funeral director may be held liable where the finding of liability was announced prior to the Board's hearing on Ferguson's Notice and Order to Show Cause.**

In his second and third arguments on appeal, Ferguson maintains that at the time of his alleged violations of the Law, the Board's standard of conduct was unfairly and impermissibly vague and that the Board's finding of liability was announced prior to its hearing on Ferguson's Notice and Order to Show Cause. We disagree.

In support of his argument, Ferguson cites two issuances from the Board. On September 1, 1999, the Board issued the following resolution:

The State Board of Funeral Directors believes that the showing, distribution or summarization of any price list of a specific funeral home or any explanation of the funeral services or merchandise available from any specific funeral home for any commercial purpose whatsoever, except as may be specifically necessary to comply with regulations of the Federal Trade Commission, for funeral services needed for a person then living, constitutes the practice of funeral directing by engaging in pre-need sales. Section 13(a) of the [Law] limits this practice to licensed funeral directors. The Board may consider it to be unprofessional conduct for any funeral director to authorize or permit any such activity constituting the practice of funeral directing.

(Ferguson Adjudication, p. 2, n. 3; Morey Adjudication, p. 1, n. 3)

Additionally, on December 7, 1999, the following Board statement appeared in the Pennsylvania Bulletin:

[a] licensed funeral director commented that the Board should include a provision under § 13.224 [of the Board's regulations] to address insurance funding of prepaid contracts. The Board responds that jurisdiction over the regulation of insurance of any type, including insurance contracts to fund funerals, must meet the State laws and regulations administered and enforced by the Insurance Commissioner.

(Ferguson R.R. 208a)

Ferguson contends that the September 1, 1999 resolution demonstrates that the Board prejudged his case before conducting the November 10, 1999 hearing on the merits. He further maintains that since the Board had no definitive statement regarding insurance matters and their relation to pre-arranged funerals, the Notice and Order to Show Cause was the first

instance where he could have known of the Board's prohibition against funeral directors and insurance agents assisting one another. We conclude that both arguments lack merit.

▆▆ Ferguson was charged with violating Section 11(a)(5) of the Law. The Law was enacted in 1952 and has not undergone significant changes over the past forty-eight years. Since its enactment, the Law has provided that the Board may suspend a funeral director's license for gross incompetency, negligence, or misconduct in the profession. Section 11(a)(5) of the Law, 63 P.S. § 479.11(a)(5). Moreover, Section 13.202(1) of the Board's regulations defining "unprofessional conduct" as the "aiding or assisting ... an unlicensed person to engage in an act or practice for which a license is required," was promulgated in 1973. 49 Pa. Code § 13.202(1). Thus, at the time of Ferguson's activities in 1996, Pennsylvania law allowed the Board to suspend a funeral director's license for unprofessional conduct consisting of aiding and assisting in the unlicensed practice of funeral directing.

Ferguson still complains that in 1996, neither the Law nor the Board's regulations specifically provided that the distribution of price lists from any specific funeral home for commercial purposes and the practice of obtaining business through the sale pre-arranged funerals by insurance agents, constituted aiding and assisting in the unlicensed practice of funeral directing. This Court has recognized, however, that the Board must be given a large degree of latitude in determining what constitutes "misconduct" under its regulations and we are reluctant to substi-

tute our judgment for that of the Board. *See Hunt v. Department of State, Pennsylvania State Board of Funeral Directors,* 45 Pa.Cmwlth. 324, 405 A.2d 996 (1979). Furthermore, an administrative agency's interpretation of a statute over which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous. *Mormak v. Unemployment Compensation Board of Review,* 135 Pa.Cmwlth. 232, 579 A.2d 1383 (1990).

▆▆ Ferguson further suggests that the Board's September 1, 1999 resolution surreptitiously avoided the rule-making process required by the Commonwealth Documents Law.[16,17] The Commonwealth Documents Law requires that an agency give public notice of its intention to promulgate, appeal, or amend any administrative regulation. Section 201 of the Commonwealth Documents Law, 45 P.S. § 1201.

▆▆ The Board defends its resolution by arguing that it is a policy-statement and as such, is not a regulation subject to the Commonwealth Documents Law. We agree.

▆▆ The starting point in determining whether an agency pronouncement is a statement of policy or a regulation is generally the agency's own characterization of the rule. *See Pennsylvania Human Relations Comm'n v. Norristown Area Sch. Dist.,* 473 Pa. 334, 374 A.2d 671 (1977). Here, the Board has continually referred to its September 1, 1999 pronouncement as a "resolution."

In addition, the Board's pronouncement did not establish a binding norm. Rather, the Board summarized its concern that the

16. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602. Section 101 of the Commonwealth Documents Law, 45 P.S. § 1101, which constituted the short title to the Commonwealth Documents Law, was repealed by the Act of July 9, 1976, P.L. 877. In the absence of a new title, we shall refer to the act as the Commonwealth Documents Law.

17. In his discussion of the Commonwealth Documents Law, Ferguson briefly likens the Board's September 1, 1999 resolution to that of an *ex post facto* law. Ferguson did not, however, raise this issue before the Board and it is therefore, waived. Pa. R.A.P. 1551(a).

use of funeral home price lists for commercial purposes constitutes the unlicensed practice of funeral directing. The Board concluded that it *might* consider it to be unprofessional conduct for a licensed funeral director to authorize or permit any such activity. Thus, the Board's pronouncement did not restrict its discretion. Consequently, the Board is free to consider *in toto* all the relevant circumstances surrounding the activity and, in its judgment, decide whether the activity constituted the unlicensed practice of funeral directing and ultimately, where pertinent, unprofessional conduct by a funeral director.

Accordingly, we conclude that the Board's September 1, 1999 pronouncement was a policy statement and that therefore, it was not subject to the Commonwealth Documents Law. *See generally, R.M. v. Pennsylvania Hous. Fin. Agency,* 740 A.2d 302 (Pa.Cmwlth.1999), *appeal denied,* 563 Pa. 669, 759 A.2d 390 (2000) (agency regulations must be promulgated pursuant to the notice and comment provisions of the Commonwealth Documents Law in order to have the full force and effect of law while policy statements do not).

Moreover, in the Board's April 6, 2000 adjudication, the Board addressed Ferguson's allegations that it prejudged the matter. The Board stated as follows:

> The Board did not consider the charges or allegations of this matter in proposing the [September 1, 1999] resolution. Instead, as indicated by the minutes, Board members believed that the use of third-party sellers of [pre-arranged] funeral services was a problem throughout the Commonwealth. The Board sought to provide guidance to practitioners of its view of Section 13(c) of the [Law]. The Board did so to alert the unwary practitioner to avoid engaging in this activity and being subject to possible disciplinary action.
>
> In making its Findings of Fact in this matter, the Board has considered only the evidence presented at the hearing, together with admissions on file. Prior to adjudication of this matter, the Board did not consider what it might have believed to be an appropriate sanction for [Ferguson]. The Board has not prejudged [Ferguson].

(Ferguson Adjudication, p. 14) Additionally, the Board noted in its adjudication that it decided the matter on the basis of its interpretation of the Law and not on its September 1, 1999 resolution. (*Id.* at p. 15) Without evidence to the contrary, we accept the Board's declaration that it did not prejudge Ferguson's case prior to its November 10, 1999 hearing on the merits.

■ And finally, the Board's December 7, 1999 statement appearing in the Pennsylvania Bulletin (regarding amendments to the Board regulations appearing at 49 Pa. Code § 13.224) does not divest the Board of jurisdiction to consider whether the sale of pre-arranged funeral policies violates the Law's prohibition of individuals other than licensed funeral directors from making financial arrangements for funeral services. The Board's statement merely advises that any contract for insurance to fund pre-arranged funerals must meet the rules and regulations of the Insurance Commissioner.

Accordingly, based upon the foregoing, we affirm the Board's April 6 and October 4, 2000 orders.

### ORDER

AND NOW, this 5th day of February, 2001, the orders of the Pennsylvania State Board of Funeral Directors dated April 6 (docket number 0103–48–1999) and October 4, 2000 (docket number 0582–48–1999) are AFFIRMED.