**VOLKSWAGEN OF AMERICA, INC. and Audi of America, Inc., Petitioners,**

v.

**STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.

Decided Jan. 8, 2004.

John B. Consevage, Harrisburg, for petitioner.

Thomas A. Blackburn, Harrisburg, for respondent.

John L. Geiser, State College, for intervenor.

Kandice J. Giurintano, Harrisburg, for amicus curiae.

BEFORE: FRIEDMAN, J., SIMPSON, J., and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

Volkswagen of America, Inc. and Audi of America, Inc. (together Manufacturer) petition for review of the decision of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) sustaining the protest of Shields Motor Co. (Dealer).[1] To resolve the protest, the Board interpreted "unsubstantiated" as the word is used in Sections 9 and Subsection 9(e) of the Board of Vehicles Act (Act).[2] We affirm.

---

1. The Pennsylvania Automobile Association (PAA) filed a friend of the Court brief agreeing with the Board and Dealer.

2. Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. §§ 818.1–818.37. Section 9 is titled **Reimbursement for all parts and service required by the manufacturer or distributor; reimbursement audits.** Subsection 9(e) is titled **Warranty reimbursement and incentive or reimbursement program approval and audits.**

Dealer protested Manufacturers' notice that it would charge back to Dealer approximately $250,000.00 in warranty reimbursements.[3] Dealer argued doing so violates Subsection 9(e)(2) of the Act (audit charge-back provision).[4]

Manufacturer conceded Dealer's warranty reimbursement claims were not false; therefore, Manufacturer had the burden to show Dealer's claims were unsubstantiated. 63 P.S. § 818.8(d)(3). Relying on principles of statutory construction, Manufacturer asserted the term "unsubstantiated" in the audit charge-back provision must be read in concert with the term "substantiated" in Subsection 9(e)(1.1) (warranty reimbursement provision).[5] Manufacturer argued: 1) it requires technician time-stamps for all warranty work; 2) this requirement is reasonable as it helps establish expected service times and check whether a service technician is spending appropriate time on the service; and 3) Dealer failed

to comply with this requirement, consequently rendering its warranty reimbursement claims unsubstantiated.

The Board determined the two provisions apply to warranty claims in different contexts. Thus, the Board rejected Manufacturer's argument that substantiation at the audit charge-back stage required the same documentation as at the warranty reimbursement stage. The Board essentially held it may resolve a protest action under the audit charge-back provision without reference to the substantiation requirements of the warranty reimbursement provision.

The audit charge-back provision permits a charge back of unsubstantiated claims and applies to an audit after payment. It provides no opportunity for a dealer to correct its claims. Also, it neither includes nor incorporates the warranty reimbursement language for substantiation. *See LTV Steel Co., Inc. v. Workers' Comp.*

---

3. Under Subsections 8(d)(1), (4), (5) of the Act, a dealer who believes a manufacturer or distributor with which it holds a franchise has violated or is violating the Act may file a protest with the Board. The protested action may not become effective until a final determination by the Board, and not even then if there is good cause for not permitting the protested action. The Board may direct the manufacturer or distributor to perform acts necessary for compliance with the Act. 63 P.S. § 818.8(d)(1), (4), (5).

4. 63 P.S. § 818.9(e)(2) states, with emphasis added:

    *The manufacturer or distributor shall be permitted to audit claims* within a two—year period from the date the claim was paid or credit issued by the manufacturer or distributor *and to charge back any false or unsubstantiated claims.* If there is evidence of fraud, this subsection does not limit the right of the manufacturer distributor to audit for longer periods and charge back for any fraudulent claim, subject to the limitations period under 42 Pa.C.S. (relating to judiciary and judicial procedure).

5. The Act of October 18, 2000, P.L. 577, added Subsection 9(e)(1.1), 63 P.S. § 818.9(e)(1.1), which provides, with emphasis added:

    Where the automobile, motorcycle or truck manufacturer or distributor disapproves any claim, the manufacturer or distributor shall describe in writing or by electronic transmission what reasonable corrective action the dealer must perform to receive payment for the claim, or the claim shall be deemed approved within 30 days of the original disapproval and payment to the dealer shall be made within 30 days of the deemed approval. *The automobile, motorcycle or truck manufacturer or distributor shall not deny a claim or reduce the amount to be reimbursed if the dealer has reasonably substantiated the claim in accordance with reasonable written requirements of the manufacturer or distributor,* provided that the dealer has been notified of the requirements prior to the time the claim arose and the requirements were in effect at the time the claim arose.

*Appeal Bd. (Mozena)* 562 Pa. 205, 754 A.2d 666 (2000) (because General Assembly knew how to provide hearing impairment adjustment rating based on aging but did not do so, it must be inferred that General Assembly intended no adjustment for aging be made); *Ferguson v. State Bd. of Funeral Dir.* 768 A.2d 393 (Pa.Cmwlth. 2001) (because General Assembly knew how to approve action of unlicensed persons in circumstances when it wanted to, lack of approval in other circumstances demonstrated General Assembly's intention not to approve unlicensed persons in those circumstances).

The Board found Manufacturer sought to charge back to Dealer warranty reimbursement claims that lacked labor time-stamps.[6] The amount of warranty reimbursement for labor is based upon a standard amount of time for a given job, not the actual time spent. Board Finding of Fact No. 17. The amount of warranty reimbursement for a part is based upon the price of the part; no reimbursement is based upon the amount of time a technician actually spends performing the work. As there are many other ways by which a dealer may substantiate a claim,[7] the Board determined the fact that a repair order does not include a technician's time-stamp does not render the claim unsubstantiated at the audit stage. Board Op. at 8–9.

The Board sustained in part Dealer's protest and ordered no audit charge-backs for otherwise verified warranty work lacking technician time-stamps. In all other respects, the Board dismissed Dealer's protest.

■ Asserting the Board erred in construing the audit charge-back provision, Manufacturer appeals.[8] Manufacturer essentially raises two arguments: the Board failed to follow rules of statutory construction; and, the Board failed to perceive the consequences of its interpretation.

As to the rules of construction, Manufacturer asserts the Board's holding is inconsistent with the plain language of Subsection 9(a) of the Act[9] requiring

---

6. VW sought to charge back 1416 claims, $123,210.33, that lacked time-stamps on the repair orders. VW asserted no other grounds to charge back those claims. Audi sought to charge back 662 claims, $119,385.00, that lacked technician time-stamps. Though Audi asserted other grounds to charge back some of these claims, it did not provide the Board with evidence sufficient to determine how many of the claims, and in what amounts, could be denied on those other grounds.

7. Here, with the exception of five claims, Dealer substantiated all others with the customer's signature. Ex. R–5 at p. 2, Vol. V of Certified Record at 12. Dealer's records include computerized receipts for reimbursement to Dealer for its return to Manufacturer of defective parts as well as Dealer's dated repair orders that included, among other things, the customer's name, the technician working on the vehicle, and specifically what work was done under the manufacturer's warranty. Ex. P–144—P–158.4, Vol. VI of Certified Record at 13. Before the Board,

Manufacturer argued these claims were "unsubstantiated" because Dealer did not comply with its policy manuals by failing to "use a functioning time control system and/or to create and maintain proper documentation supporting the alleged repairs." Manufacturer's Reply to Dealer's Post–Hearing Brief at 3, Vol. VII of Certified Record at 15.

8. This Court is required to give "due deference" and "great weight" to the Board's application of the statute it is charged with enforcing and may not disregard or overturn its interpretation without "cogent reasons" and a decision determining the Board was "clearly erroneous." *Alpha Auto Sales, Inc. v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 537 Pa. 353, 644 A.2d 153 (1994).

9. Subsection 9(a) of the Act is titled **Manufacturers or distributors to notify dealers of their obligations**, 63 P.S. § 818.9(a). It states:

manufacturers to prescribe reasonable written requirements for warranty work. Manufacturer also argues the Board's interpretation violates the rule of statutory construction that all parts of a statute should be read together.

As to the consequences of the Board's interpretation, Manufacturer contends it may now only insist on a dealer's compliance with the reasonable requirements of the warranty manual for the 30–day period after a dealer submits a claim. Once this 30–day period expires, the terms of the dealer agreement are no longer enforceable. Manufacturer contends the Board's ruling effectively eliminates its right to audit dealers to ensure proper substantiation of warranty reimbursement claims. The Board's ruling also eliminates its right to prescribe reasonable written requirements for substantiation. Manufacturer claims the Board's order creates the impractical result that each dealer may choose what documents it will maintain to substantiate previously paid warranty reimbursement claims.

The Board supports its construction of the audit charge-back provision by reference to legislative history. When the General Assembly amended the Act to add the warranty reimbursement provision, it did not amend the audit charge-back provision or otherwise incorporate the meaning of "substantiated" in the warranty reimbursement provision. This action demonstrated the General Assembly's intent not to do so. *Meier v. Maleski*, 670 A.2d 755 (Pa.Cmwlth.1996), *aff'd*, 549 Pa. 171, 700 A.2d 1262 (1997) (object of all statutory interpretation is to ascertain and effectu-

ate the intent of the General Assembly). The Board asserts its construction of the audit charge-back provision is cogent and should be affirmed under the appropriate deferential standard of review. *Alpha Auto Sales, Inc.*

■ Contrary to Manufacturer's argument, the Board did not limit Manufacturer's right to insist on compliance with the reasonable terms of its franchise agreement. Indeed, the Board's holding does not diminish Manufacturers' remedies under the franchise agreement, all of which remain intact. Rather, the Board applied the unrestricted substantiation language in the audit charge-back provision to permit dealers to use reasonable proof in support of claims in the audit context. Because the audit may occur up to two years after the warranty work is completed, and because the statute does not envision an opportunity to correct proof problems at the audit, the Board's holding is reasonable.

The Board determined a dealer could substantiate its claim during an audit in any number of ways. In addition to a technician's time-stamp on a repair order, the dealer might establish that it provided the claimed labor by showing the customer's complaint was resolved; a defective part was removed and replaced; or even that the technician, supervisor, or timekeeper noted the technician worked on the vehicle.

Also, the Board did not limit a manufacturer's right to insist on full compliance with all reasonable substantiation require-

---

Each new vehicle manufacturer or distributor shall specify in writing to each of its new vehicle dealers licensed in this Commonwealth the dealer's obligations for pre-delivery preparation and warranty service on its products, shall compensate the new vehicle dealer for service required of the dealer by the manufacturer or distributor and shall provide the dealer with a schedule of compensation to be paid the dealer for parts, work and service, and the time allowance for the performance of such work and service.

ments in the context of initial payment of warranty reimbursement claims. The Board's holding does not expand substantiating proof at this stage.

In *Alpha Auto Sales, Inc.,* our Supreme Court observed:

> The proper place to begin the appropriate inquiry is not, however, with the dictionary but with due deference to the views of the regulatory agency directly involved in administering the statute in question. We have long held that the "contemporaneous construction of a statute by those charged with its execution and application, especially when it was long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it is clear that such construction is erroneous." (citation omitted).

537 Pa. 353, 357, 644 A.2d 153, 155.

We cannot find clear error in the Board's interpretation. In particular, we cannot find clear error in the holding that substantiation at the initial warranty reimbursement stage must follow the manufacturer's requirements, as specifically provided by statute, but that substantiation at the subsequent audit charge-back stage is not so limited in the absence of explicit statutory direction. Nor is it clearly erroneous to permit broader proof when there is no opportunity to correct deficiencies. According great weight to the Board's interpretation, we affirm.

### ORDER

AND NOW, this 8th day of January, 2004, the order of the Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is affirmed.