The State Board of Funeral Directors *v.* Edward Charles Cieslak, Appellant.

Argued March 4, 1976, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*Norbert A. Michalski,* for appellant.

*Alan M. Bredt,* Deputy Attorney General, for appellee.

OPINION BY JUDGE MENCER, April 9, 1976:

Edward Charles Cieslak (appellant) brings this appeal to contest the adjudication and order of the State Board of Funeral Directors (Board), dated September 15, 1975, which suspended, for 6 months, appellant's license to act as a funeral director. After hearings held on March 7, 8, and 20, 1973, the Board found appellant in violation of Sections 6 and 13(c) of the Funeral Director Law[1] (Act) and regulation 16.3 of the Rules and Regulations of the Board in effect prior to October 20, 1973 and guilty of conduct that would be the basis of a suspension under Section 11 of the Act.[2] Appellant asserts, first, that the Board's findings of fact are not

---

1. Act of January 14, 1952, P.L. (1951) 1898, *as amended,* 63 P.S. § §479.6, 479.13(c).

2. 63 P.S. §479.11.

supported by substantial evidence. Alternatively, appellant insists that, even if supported by substantial evidence, the facts as found by the Board do not, as a matter of law, constitute violations of the Act. Finally, appellant alleges violations of his due process rights under the Fourteenth Amendment to the United States Constitution in that there was almost a two and one-half year delay between the close of hearings and the Board's issuance of its adjudication and that membership of the Board had so changed in the interim that two of the four members of the Board who decided the case were not present at the hearings in 1973. Notwithstanding these objections, we must affirm.

The misconduct charges against appellant stemmed from certain alleged irregularities in financial arrangements during his tenure as manager of the C. C. Cieslak Funeral Home. The Board also found that appellant failed to display a widow's license as required by law after the death of the owner of the funeral home. Our review of the record and the extensive findings of fact made by the Board convinces us that there was substantial evidence to support findings that appellant failed to display the proper license in contravention of Section 6 of the Act; that appellant failed, in two instances, to place monies for prepaid funerals in escrow accounts, contrary to Section 13(c) of the Act; and that certain other financial irregularities existed in the conduct of the business.

We next turn to the question of whether these transgressions are grounds for the suspension of a license as a matter of law. Appellant argues that the Act was designed primarly to protect the public from health hazards and irreverent treatment of a deceased and that it was not designed to deal with financial matters. We disagree. Section 11 of the Act provides in part:

"The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license

of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:

. . . .

"(5) Gross incompetency, negligence or misconduct in the carrying on of the profession.

"(6) Violation of or non-compliance with the provisions of this act or the rules and regulations of the board."

"Profession" in this context is defined in Section 2 of the Act, 63 P.S. §479.2, as follows:

"The term 'profession' as used in this act shall mean the aggregate of all funeral service licensees and their duties and responsibilities in connection with the funeral as funeral directors licensed under this act."

The same section defines some of the duties and responsibilities of a funeral director:

"The term 'funeral director' shall include any person engaged in the profession of a funeral director or in the care and disposition of the human dead, or in the practice of disinfecting and preparing by embalming the human dead for the funeral service, burial or cremation, or the supervising of the burial, transportation or disposal of deceased human bodies, or in the practice of funeral directing or embalming as presently known, whether under these titles or designation or otherwise. *The term 'funeral director' shall also mean a person who makes arrangements for funeral service and who sells funeral merchandise to the public incidental to such service or who makes financial arrangements for the rendering of such services and the sale of such merchandise.*" (Emphasis added.)

The sections of the Act noted above clearly evince a legislative recognition of the financial aspects of the

funeral director's profession and an intent that some of those aspects should be subject to the Board's scrutiny.

Appellant's reliance on *McKinley v. State Board of Funeral Directors,* 11 Pa. Commonwealth Ct. 241, 313 A.2d 180 (1973), for the proposition that misconduct does not encompass activities unrelated to the public health or reverential treatment of the dead is misplaced. In *McKinley,* the sole issue was whether the Board *had the power to issue regulations* prohibiting ownership of cemeteries by funeral directors. In this case, with the exception of the charge relating to regulation 16.3, the *Act itself* has been violated. The Board, moreover, is allowed wide latitude in defining what constitutes "misconduct." *Beatty v. State Board of Undertakers,* 352 Pa. 565, 43 A.2d 127 (1945). Sections 6 and 13(c) of the Act clearly have been violated, thus incurring the penalties under Section 11(6). In addition, the financial irregularities are separately cognizable as misconduct under Section 11(5).

We do agree with appellant, however, that regulation 16.3, which provided that a funeral director "should" retain a copy of the written statement of all expenses furnished to decedent's next of kin, is not mandatory. Therefore, no violation of Section 11(6) of the Act can be based on appellant's failure to keep such copies.[3] This does not, however, affect the final result in this case.

We next turn to appellant's assertions that the Board's delay in rendering its decision and the consequent change in the Board's membership violated his due process rights. The decision in appellant's case was delayed nearly two and one-half years; such delays in serious matters involving a person's livelihood are not to be condoned.

---

3. Since October 20, 1973, the applicable regulation has used the word "shall" rather than the word "should" relative to the funeral dirctor's retention of a copy of the written agreement. See 49 Pa. Code §13.184 for this and other changes relative to written agreements.

However, to prevail in his assertion that his constitutional rights have been violated, appellant must show that some harm or prejudice to his interests has been caused by the delay. *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 318 A.2d 910 (1974). In the instant case, appellant has continued to work during the period of the delay and still continues by virtue of a supercedeas granted by this Court. Therefore, we believe appellant's interests have not been prejudiced by the delay.

With regard to the change in the Board's membership, we note that, although it is obviously preferable that the administrative body which decides a case be composed of the same members who heard the testimony, such a constant is not required by the due process clause. All that must be done to comply with due process is that members not present when testimony is taken review the testimony before the adjudication is handed down. *General State Authority v. Loffredo,* 16 Pa. Commonwealth Ct. 237, 328 A.2d 886 (1974). To require more could effectively paralyze many administrative boards whose membership must change from time to time. Appellant has not alleged a failure on the part of the new members of the Board to review the testimony. Indeed, the Board's careful attention to the findings of fact in the adjudication would belie such an assertion. Therefore, we find no violation of appellant's due process rights.

Accordingly, we enter our

### ORDER

Now, this 9th day of April, 1976, the order of the State Board of Funeral Directors, providing for 6 months' suspension of the funeral director's license of Edward Charles Cieslak, is affirmed, said suspension to commence twenty (20) days from this date.