Mary VEHSLAGE, John Vehslage, Eldena Hoene, Francis Otte and Arthur Moorman Farm, Inc., Jesse Colliver, Myna Colliver, Charles Cordes, Elsie Hague, Mary Catherine Hall, Robert G. Hall, Carolyn Lerch, Mary Ellen Stockover and George Vehslage, Charles Cordes, Elsie Hague, Jesse Colliver, Myna Colliver, Mary Catherine Hall, Robert G. Hall, Carolyn Lerch, Mary Ellen Stockover, George Vehslage, Don Plummer and Deloris Plummer, Appellants,

v.

ROSE ACRE FARMS, INC. and Board of Zoning Appeals of Jackson County, Indiana, Appellees.

No. 1–1283A375.

Court of Appeals of Indiana, First District.

Feb. 25, 1985.

Ted B. Lewis, Donn H. Wray, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Thomas R. Haley, Haley & Farrow, Seymour, for appellants.

John M. Lewis, Seymour, for appellee, Rose Acre Farms, Inc.

John F. Rothring, Rothring, Lambring & Black, Seymour, for appellee, Bd. of Zoning Appeals.

NEAL, Judge.

## STATEMENT OF THE CASE

This appeal is a consolidation of three administrative decisions of the Board of Zoning Appeals of Jackson County, Indiana (Board) granting special exceptions to Rose Acre Farms, Inc. (Rose Acre) over the objections of remonstrators. In each case, the trial court affirmed the Board's decision and findings.

## STATEMENT OF THE FACTS

The procedural history of these three administrative proceedings is complex. We will attempt to consolidate the facts of all three cases into one summary; any minor factual differences, if relevant to our decision, will be pointed out in the Discussion, *infra.*

In each case, the proceeding was commenced by Rose Acre's filing of an Application for Improvement Location Permit and Certificate of Occupancy with the Board. The application was treated as a request for special exception pursuant to Jackson County zoning ordinances. The application requested, in the *Vehslage* and *Colliver* cases, approval of an agricultural confined poultry feeding operation. In *Cordes*, the application requested approval of an expanded confined poultry feeding operation on the Cort Acres site. In each case, the Board conducted a hearing for the special exception request. The Board consisted of five members, the names of whom varied depending on the year in which application

was made. At the hearing, several people, including remonstrators, were allowed to speak concerning the application for special exception. However, no witnesses were sworn to testify and no exhibits were authenticated and introduced into evidence.

Section 3.3 of the Jackson County zoning ordinances, states in relevant part:

"(a) The Board may grant a special exception for a use in a district if after a hearing ... it finds that: ... (3) granting the exception will not subvert the general purposes served by this ordinance and will not materially and permanently injure other property of uses in the same district or vicinity."

Remonstrators testified as to the negative impact the proposed projects would have on the value of their own property. They, and others, identified such problems as foul odors, rats, trash, traffic, and devaluation of the property adjoining the proposed feeding operations.

In each case, however, the Board granted the exception. At this juncture in the case histories, though, things begin to get a little more complicated.

Once the Board granted the exception in *Vehslage*, remonstrators petitioned for judicial review. The trial court found that the Board failed to present a sufficient record for review; once the Board filed a supplemental response, the court entered judgment for Rose Acre. *Vehslage* and *Colliver, infra,* were consolidated and went up on appeal to this court, which reversed the trial court's decision, stating that the Board had failed to make written findings of facts as required by statute. The cases were remanded and the Board, now comprised of different members, issued such findings. In both decisions, only three of the Board members that made the findings of fact had been members of the Board when the original hearing was held. Of those three, only two members concurred in all the findings; the third member who had been present at the original hearing disagreed with Findings of Fact 3 and 4.

Finding of Fact 3 states that granting the exception will not subvert the general purpose served by the Zoning Ordinance of Jackson County for several reasons; Finding of Fact 4 states that granting the exception will not materially and permanently injure other property or uses in the same district and vicinity for several reasons.

In *Cordes,* the trial court granted judicial review of the Board's decision to grant the special exception and then withheld its decision until the Court of Appeals' decision was handed down in *Vehslage.* Following that decision, the trial court remanded the *Cordes* case to the Board for findings of fact; as in the other cases, the Board which made the findings was composed of different members than those individuals who had conducted the original hearing. As before, too, one of the original three members disagreed with a portion of the findings.

### ISSUES

Appellants raise the following issues, restated by us:

I. Were remonstrators deprived of due process because the successor Board, on remand, submitted written findings of fact to support the issuance of a special exception by its predecessor Board?

II. Did the hearing in the instant case satisfy due process requirements?

I. *Successor Board's authority—due process.*

■■■ An administrative agency has the duty to make a finding of the pertinent facts on which its decision is based in order to facilitate judicial review. *Metropolitan Board of Zoning Appeals of Marion County v. Graves,* (1977) Ind.App., 360 N.E.2d 848. The purpose of this requirement is to prevent "judicial intrusion into matters committed to administrative discretion by the legislature". *State ex rel. Newton v. Board of School Trustees,* (1984) Ind.App., 460 N.E.2d 533, 541. Further, in the case in which the Board fails to make such findings and the cause is remanded to

the Board, the findings are generally to be made without further hearing or presentation of evidence. *Habig v. Harker* (1983) Ind.App., 447 N.E.2d 1114. This was the course of events in *Vehslage* and *Colliver* upon remand by the Court of Appeals.

■■■ Appellants describe a "fatal flaw" of the findings: the findings made in 1980 were entered by a majority consisting of three members of a five-member board. However, they state, of the three members comprising the majority, only two heard the evidence in 1976 (and in 1978 in *Cordes*). Thus, remonstrators argue, "they have been deprived of their basic due process right to a fact-finder who has heard the evidence upon which he rules". Appellants' brief, pg. 33. Actually, remonstrators' argument in essence posits that a newly-constituted board can overrule the decision made by the prior board, which of course is their aim.

"... [I]t is a general rule that in the absence of a statute to the contrary, due process or a fair hearing is not denied by the mere fact that an otherwise authorized person makes or participates in the making of a decision without having been present when the evidence was taken. In this connection it is recognized that to 'hear' relates, not to physical presence at the taking of evidence, but to certain procedural minimums to ensure an informed judgment by the one who has the responsibility of making the final decision and order."

2 Am.Jur.2d *Administrative Law,* Sec. 437 (1962).

Our research of Indiana case law revealed no decision which addresses this particular subject; turning to foreign jurisdictions, however, we found the content of the above-cited-language reiterated in several cases.

The Vermont Supreme Court addressed this issue in *Lewandowski v. Vermont State Colleges,* (1983) 142 Vt. 446, 457 A.2d 1384, a case of first impression for it. The court described the appellant's due process claim, stating that the essence of it is

"whether the decision of an administrative tribunal is invalidated by the participation of one or more members who were absent from a hearing at which evidence was taken". *Lewandowski, supra,* at 1387.

"... we are satisfied that the majority of cases hold that in order to comply with due process it is only required that members not present when testimony is taken review the testimony before participating in the decision. 2 K. Davis, Administrative Law Treatise Sec. 11.01–11.04 (1958); see e.g., *McGraw Electric Co. v. United States,* 120 F.Supp. 354 (E.D.Mo.), *aff'd,* 348 U.S. 804, 75 S.Ct. 45, 99 L.Ed. 635 (1954); *Rothkoff v. Ratner,* 104 Misc.2d 204, 428 N.Y.S.2d 138 (1980); *Bruns v. Department of Registration & Education,* 59 Ill.App.3d 872, 17 Ill.Dec. 189, 376 N.E.2d 82 (1978); *State Board of Funeral Directors v. Cieslak,* 24 Pa. Commw. 315, 355 A.2d 590 (1976); *Clairborne v. Coffeyville Memorial Hospital,* 212 Kan. 315, 510 P.2d 1200 (1973). See generally, Annot., 18 A.L.R.2d 606 (1951). We therefore follow the majority rule, and hold that on the facts presented here, where a quorum of administrative officers has been present throughout, and where the whole tribunal has carefully reviewed the record prior to rendering a decision, grievant was not denied due process of law."

*Id.* at 1387–88.

The Pennsylvania case of *The State Board of Funeral Directors v. Cieslak,* (1976) 24 Pa.Commw.Ct. 315, 355 A.2d 590 is closer factually to the case at hand.

In *Cieslak,* a funeral director contested a 1975 order of the State Board of Funeral Directors which suspended his license to practice his profession for six months. The hearings were held in 1973 and Cieslak was found in violation of several regulations. Cieslak asserted in part that the Board's delay in rendering its decision and the consequent change in the Board's membership violated his due process rights. *Cieslak, supra,* 355 A.2d at 593. As to the first part of Cieslak's claim, the court determined that he had proved no prejudice

caused by the delay. With regard to the change in membership, the court noted that while it is "obviously preferable" that the body which decides a case be composed of the same members who heard the testimony, "such a constant is not required by the due process clause":

"All that must be one [sic] to comply with due process is that members not present when testimony is taken review the testimony before the adjudication is handed down ... To require more could effectively paralyze many administrative boards whose membership must change from time to time."

*Id.* at 593. *See King's Mill Homeowner's Ass'n, Inc. v. City of Westminster,* (1976) 192 Colo. 305, 557 P.2d 1186; *contra, Miskovich v. City of Helena,* (1976) 170 Mont. 138, 551 P.2d 995.

The above reasoning is even more applicable to the instant situation since in the present case, the subsequent Board was merely making findings of fact, not making a decision as to whether to grant the special exception to Rose Acre Farms. That decision was made, as it should have been, by the 1976 (or 1978, as the case may be) Board which heard the testimony of remonstrators and others. Our review of the record indicates that the 1980 Board discussed each application for special exception and its ramifications as well as engaged in substantial review of the evidence in the record. Appellants do not allege a failure on the part of new members of the Board to review the testimony. Accordingly, we find no violation of remonstrators' due process rights.

Remonstrators raise a point which we feel constrained to address. They cite a very recent Third District opinion, *State ex rel. Newton, supra,* as authority for the proposition that, at the very least, remonstrators are entitled to reconstitution of and redetermination of the claim by the 1976 board.

In *Newton,* the 1975 school board had made findings deemed inadequate by the Court of Appeals in 1980. The case was remanded to the school board with di-

rections to make adequate findings of fact or in the alternative to grant a new hearing. *State ex rel. Newton v. Board of School Trustees*, (1980) Ind.App., 404 N.E.2d 47. The school board entered findings on January 13, 1981; at that time, none of the members of the 1981 board were members in 1975. Newton filed a motion to strike the proposed findings; the trial court granted the motion and ordered the school board to resubmit findings. The 1981 board reconstituted the 1975 board and assigned them the task of entering adequate findings to support Newton's dismissal. Newton challenged this resuscitation of the 1975 board as an illegal, ultra vires act so that any findings entered by them are a nullity. *Id.* at 540.

In addressing the legality of the unprecedented act of the 1981 board, Judge Garrard, writing for the Third District, commented that the issue had not yet been discussed by case law and thus must be resolved by relying upon analogy. *Id.* at 541. He found the 1975 board analogous to "lame duck" judges; that is, those judges who have presided at a trial but for some reason, such as death, sickness, or election defeat, are no longer available to make all necessary rulings after the hearing is concluded.

Ind.Rules of Procedure, Trial Rule 63(A) states in part:

"The judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded. If the judge before whom the trial or hearing was held is not available by reason of death, sickness, absence, or unwillingness to act, then any other judge regularly sitting in the judicial circuit or assigned to the cause may perform any of the duties to be performed by the court after the verdict is returned ... but if he is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial or new hearing, in whole or in part."

Using T.R. 63(A) as its basis, in *Smith v. State*, (1973) 260 Ind. 555, 297 N.E.2d 809, the Indiana Supreme Court held that the judge who had presided at all the hearings on a controversy was the proper person to rule on a motion to set aside a summary judgment despite the fact that he was no longer a judge. *See Bailey v. Sullivan*, (1982) Ind.App., 432 N.E.2d 75.

The *Newton* court noted that the policy behind T.R. 63(A) (as well as *Smith*) is that "parties are entitled to have issues determined by the judicial entity hearing the evidence and observing the demeanor of the witnesses". *Id.* at 542. Applying that policy to the situation confronting it, the court found that the 1975 school board was the judicial trier of fact in Newton's original hearing; therefore, the resuscitation of the 1975 board was an "appropriate solution" for the problem presented. *Id.* The court stated that because the task assigned to the school board was merely ministerial, there was no error in recreating the board for this limited purpose. *Id.* at 543.

Mindful of our discussion in the first part of this section, we note that while the *Newton* court came to the conclusion that resuscitation was an appropriate solution, it did not state that it was an *exclusive* one.

It is black-letter law that generally, administrative agencies are creatures of statute, and only the legislature has the broad power to provide for their creation. Administrative boards, agencies, and officers have no common law or inherent powers, but only such authority as is conferred upon them by statutory enactment. 2 I.L.E. *Administrative Law and Procedure*, Sec. 21 (1957). The duties and powers of the Board of Zoning Appeals are set down in IND.CODE 18-7-4-78.

We have great difficulty with the proposition that an ex-administrative officer, after his successor has qualified for and entered upon the duties of his office, retains the power to perform any act relative to

that office. All such officers leave office with business pending and decisions unmade. Even a trial judge prior to the promulgation of Ind.Rules of Procedure, Trial Rule 63(A), and its predecessor Trial Rule 1–9, had no power to perform judicial functions after leaving the position, and his present ability to do so is now governed by the rule and the *Smith* holding. *See* 17 I.L.E. *Judges*, Sec. 9, 10 (1959). No comparable statute or rule governs administrative officers.

We must therefore conclude that an administrative board member or officer's powers, granted by state, do not transcend his term of office. When the tenure of office is completed, all authority concomitant with that office ceases. To paraphrase *Cieslak, supra,* to require reconstitution of the original administrative agency or board simply because its personnel have changed would wreak havoc on the administrative law system. Where, as here, the board has reviewed the transcript of the original hearing, it is qualified to render findings of fact upon remand.

## II. *Hearing.*

Hearings before zoning boards are conducted rather informally in contrast to the strict rules of judicial proceedings. *Boffo v. Boone County Board of Zoning Appeals,* (1981) Ind.App., 421 N.E.2d 1119. The primary purpose of hearings before the board of zoning appeals is to permit interested parties to furnish information which may assist the board in the discharge of its duty of determining whether or not a variance or an exception should be granted in a particular case. Arden H. and Daren A. Rathkopf, *The Law of Zoning and Planning,* Sec. 37.06 (4th ed. 1984). "Because a zoning board is a body usually composed of persons without legal training, courts are reluctant to impose rigid technical requirements upon their procedures so long as they are orderly, judicious, and fundamentally fair." *Boffo, supra,* at 1129.

Remonstrators argue that at the various meetings of the Board to consider the Rose

Acre request, no witnesses were sworn and no exhibits were authenticated and introduced into evidence. Therefore, they assert, "under these circumstances, no evidence was presented to the Board; consequently, no hearing was held". Appellants' brief, pg. 42.

We disagree with remonstrators' hypertechnical approach. It is established that hearings before a zoning board are conducted rather informally. As Judge Ratliff concluded in *Boffo,* "unless the procedures used upon which the ultimate conclusion is based are somehow not orderly, impartial, judicious, or fundamentally fair, they will not be held to be contrary to law". *Boffo, supra,* at 1129.

We find no error here.

For the foregoing reasons, this judgment is affirmed.

Judgment affirmed.

RATLIFF, P.J., and SHIELDS, J. (sitting by designation), concur.