

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-MI-293

## Monroe County Board of Zoning Appeals,
*Appellant/Defendant,*



FILED
Nov 13 2025, 11:51 am
C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## Bedford Recycling, Inc.,
*Appellee/Plaintiff.*

Argued: June 5, 2025 | Decided: November 13, 2025

Appeal from the Monroe Circuit Court
No. 53C06-2209-MI-1773
The Honorable Kara E. Krothe, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-MI-1729

**Opinion by Justice Molter**

Chief Justice Rush and Justices Massa and Slaughter concur.
Justice Goff dissents in part and concurs in the judgment with separate
opinion.

**Molter, Justice.**

Through a final order, the Monroe County Board of Zoning Appeals (BZA) granted Bedford Recycling, Inc. a conditional use permit to build a scrap metal collection and sorting facility. Eleven months later, the BZA revoked the permit because it decided it had made a legal error—on further reflection, the BZA explained, it concluded the facility did not satisfy the requirements of a conditional use permit. But no statute authorizes the BZA to reconsider its final orders, so we must decide whether the BZA has inherent or common law authority to do so. We conclude it does not.

# Facts and Procedural History

## I.     Permit Grant and Subsequent Revocation

In the fall of 2021, Bedford Recycling sought approval from the BZA to build a scrap metal collection and sorting facility on property Bedford owned in the county. That property is zoned for "mineral extraction" under the county ordinance, and only a few uses are presumptively allowed; scrap metal recycling is not one of them.

When a use is not presumptively allowed, a party may seek a conditional use permit, which allows the use if certain conditions are met. *Rush v. Elkhart Cnty. Plan Comm'n*, 698 N.E.2d 1211, 1213 n.1 (Ind. Ct. App. 1998). Bedford petitioned the BZA for conditional use approval of its recycling facility as a "Central Garbage/Rubbish Collection Facility." Appellant's App. Vol. 2 at 32. The zoning ordinance defines that use as "[p]ublic or private establishments contracted to remove solid waste from residential or commercial uses and transport such wastes to a locally operated public or private landfill or other waste collection facility, designated for consolidation of garbage or recycled matter." Though the application acknowledged the facility would neither "handle solid waste" nor "operate waste hauling vehicles," Bedford claimed it had worked with the County Planning Department in preparing the application and the department staff had recommended proceeding under the "Central

Garbage/Rubbish Collection Facility" permit. Appellant's App. Vol. 3 at 6. That was because the county's zoning ordinance did not include explicit operational or development standards for a scrap metal sorting facility.

The BZA considered Bedford's petition at its September 2021 meeting, during which a Bedford representative spoke and acknowledged again that the facility would not accept solid waste—typically required under this type of conditional use permit—and was "essentially a scrap yard." *Id.* at 52. No one opposed the proposal, and at the end of the meeting the BZA voted 3-0 to grant the permit, with one member not present and one member abstaining.

This grant was short lived, however, as the BZA's decision began to unravel in the following months. National waste management company Republic Services, which owns property near Bedford's proposed facility site, timely petitioned for judicial review of the Board's decision to grant the permit. Republic claimed Bedford had not satisfied the requirements for this type of conditional use.

Additionally, when the BZA hears a request, it must support its decision with written "Findings of Fact" which provide the Board's official reasoning and facilitate judicial review. Ind. Code § 36-7-4-915. While the permit was under judicial review, the county attorney was still drafting the findings to support the order. And in the process of drafting those findings, he concluded the Board made a legal error in granting the permit.

In December 2021, the BZA reconvened in two meetings to discuss the Republic Services litigation and the county attorney's concerns. During those meetings, the attorney explained his concern that a Central Garbage/Rubbish Collection Facility had requirements, including "the transportation of solid waste under contract from residences and commercial interests," which Bedford had expressly disclaimed in both its application and through its representative's testimony. *Id.* at 60. In the attorney's view, this revealed that the BZA made an "error of law" when granting the permit. *Id.* Under Court of Appeals precedent, the BZA could revoke a permit if it had been granted based on an error of law. *Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881 (Ind. Ct.

App. 2019), *trans. denied*. Apparently swayed by the attorney's comments, the Board moved to schedule another public hearing in the following months to determine whether it "erred as a matter of law by concluding that use proposed by Bedford Recycling, Inc., was a Central Garbage/Rubbish Collection Facility Use for which a Conditional Use could be granted." Appellant's App. Vol. 3 at 61.

Six months passed before the BZA reconvened. And during that time the BZA's membership changed: two members who had voted to grant Bedford's permit were replaced with new members, and an additional seat remained vacant. The county planning department also changed its mind—it had previously supported Bedford's application, but it now found the BZA had "misapplied the facts" to the zoning ordinance. The department found two reasons why the grant was in error: (1) Bedford's proposed use did not fit within the definition of a Central Garbage/Rubbish Collection facility; and (2) Bedford was really proposing a "scrap yard" facility, which was not permitted as a conditional use for a mineral extraction zone.

At the BZA's June 2022 hearing, the county attorney again explained his view to the three present BZA members that the grant was made in error. First, he believed the proposed use did not qualify because, as he had stated before, Bedford would not be contracted to remove the metal from residential or commercial areas. Second, he understood Bedford would not be dealing with "waste" in any understanding of the term because people would be bringing their scrap metal to the facility to *sell* the metal to Bedford, meaning the metal was not "waste" but "a valuable product." *Id.* at 110. A Bedford representative also appeared at the hearing, arguing that the grant was proper because its proposed use was for a "recycling facility," and although that term does not appear in the ordinance's definition of a "Central Garbage/Rubbish Collection Facility," a separate part of the ordinance envisions that kind of facility to also include a center for recycling. *Compare* Monroe County Code § 802-5(D)(3) (defining Central Garbage/Rubbish Collection Facility), *with* Monroe County Code, Conditions Pertaining to Permitted Uses in Zoning Districts § 33 (outlining conditions required for "[c]entral garbage and rubbish collection facilities, *including recycling centers*" (emphasis added)). The

BZA split and voted 2-1 to revoke the permit. Since a BZA decision required a three person majority, the vote failed, and the matter was automatically continued to the next BZA meeting in August.

By the next meeting in August, the BZA once again had a full slate of members, with only two members remaining from the September 2021 Board that had granted Bedford's permit. After further discussion, much of it repeated material from previous meetings, the BZA took another vote and came out 3-2 in favor of revoking Bedford's conditional use permit. The Board later released its official findings and conclusions,[1] which stated that Bedford's proposed plan was really for a scrap yard that involved no transportation or acceptance of "solid waste" as required, and because a scrap yard was not a permitted use under the zoning ordinance, the September 2021 BZA had acted beyond its legal authority when it initially approved the proposal. So eleven months after the BZA approved the conditional use permit, the board revoked it.

## II.    Bedford's Judicial Review Proceedings

With Republic Services' petition for judicial review of the BZA decision to grant the conditional use permit still pending, in September 2022 Bedford filed its petition for judicial review of the BZA's decision to revoke the permit. After hearing argument from both sides on Bedford's petition, the Monroe Circuit Court found that, despite the BZA characterizing its decision as a mistake of law, "the evidence shows that there were mistakes of fact and a change of reasoning . . . and the BZA has not identified any statute or statutory procedure that supports its Revocation Order." Appellant's App. Vol. 2 at 43. Based on that conclusion, the court granted Bedford's petition, vacated the revocation order, and reinstated the conditional use permit. In the same order, the circuit court stated it was *not* deciding whether the original grant of the

---

[1] The copy in the Appellant's Appendix is unsigned and undated, but neither party has disputed its accuracy.

permit was proper—that was a question for the court to decide in Republic Services' judicial review case.

The BZA appealed, and after oral argument the Court of Appeals reversed in a unanimous decision. *Monroe Cnty. Bd. of Zoning Appeals v. Bedford Recycling, Inc.*, 241 N.E.3d 1144 (Ind. Ct. App. 2024). The appellate panel disagreed with the trial court's conclusion that the revocation decision was based on a change of reasoning, instead finding the Board was clear in both the hearings and in its written findings that its decision was based on only the evidence available at the September 2021 hearing. The panel also held the BZA made an error of law in granting the permit because Bedford's proposed facility did not meet the ordinance requirements for a Central Garbage/Rubbish Collection Facility. Accordingly, the panel held the BZA was allowed to correct that error under the court's precedent in *Essroc*.

Bedford then petitioned for transfer, which we grant today, thereby vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).[2]

## Discussion and Decision

The question presented is whether the BZA had the authority to reconsider its final order granting Bedford a conditional use permit. That is a purely legal question we consider de novo. *See Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indianapolis, LLC*, 217 N.E.3d 510, 514 (Ind. 2023). Bedford argues the BZA did not have that power because the BZA is a creature of statute, and no statute authorizes reconsideration. The BZA responds that it did have that power, relying on a line of Court of Appeals

---

[2] Given the statewide importance of the administrative law issues this case presents, we invited amicus briefing from interested parties. In response, we received briefs from Accelerate Indiana Municipalities, the Association of Indiana Counties, and the Indiana Municipal Lawyers Association; the Indiana Builders Association and the Associated Builders & Contractors of Indiana/Kentucky; the Institute for Justice; and the Pacific Legal Foundation. We are grateful for that insightful briefing.

cases that say administrative bodies have common law authority to reconsider decisions that are based on a legal error.

We agree with Bedford. In Part I, we discuss our longstanding precedent establishing that administrative bodies lack inherent or common law authority to reconsider final decisions. In Part II, we explain why we disapprove of the Court of Appeals cases carving out an exception to that rule for legal errors. And in Part III, we explain our holding that the BZA had no authority to reconsider Bedford's conditional use permit.

## I.    Administrative bodies have no common law or inherent authority to reconsider final orders.

BZAs are administrative bodies, *Kunz v. Waterman*, 283 N.E.2d 371, 374 (Ind. 1972), which means they are statutory creatures limited to the powers conferred by their enabling acts, *Blue v. Beach*, 56 N.E. 89, 93 (Ind. 1900).[3] And we have long held that a statutorily created administrative entity possesses no common law authority supplementing the authority of its enabling statutes. *See, e.g.*, *Smith v. Thompson Const. Co.*, 69 N.E.2d 16, 17 (Ind. 1946) ("Since the Board derives its authority from the statutes, it can do the things authorized by the Legislature and beyond that it cannot legally go. Its authority is not expanded by the 'common law.'"); 1 Ind. Law Encyc. Administrative Law and Procedure § 9 (2025) ("Administrative boards, agencies and officers have no common-law or inherent powers but only such authority as is conferred upon them by valid statutory enactment."); *id.* ("A statutorily created administrative body has limited powers and jurisdiction, possessing only those powers

---

[3] The BZA's argument on appeal was focused on whether the trial court erred by looking beyond the BZA's written findings when concluding the revocation was improper. Because we hold no "error of law" exception exists, we need not address this issue.

that are expressly granted to it by the statute creating it and other necessary incidental powers.").[4]

Critical here, we have said this limitation means an agency cannot reconsider its own final decisions unless the legislature explicitly grants the agency that power. *Cress v. State*, 152 N.E. 822, 826 (Ind. 1926) ("[P]ower to undo an act once done will not be implied from the mere grant of power, in the exercise of a sound discretion, to do the act."); *see also Smith*, 69 N.E.2d at 17 ("We do not believe that the grant of authority to correct clerical errors or mistakes of fact can be interpreted to mean that the Board may at any time grant a new hearing upon the essential necessary issues which have been determined."). The legislature does sometimes give administrative bodies that power explicitly. *See, e.g.*, I.C. § 4-21.5-3-31(a) (granting the "ultimate authority . . . jurisdiction to modify a final order" in limited circumstances). In other words, when the legislature is silent, we infer it meant to withhold that power. *See ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) ("As we interpret the statute, we are mindful of both what it does say and what it does not say." (quotations omitted)).

Though the Court of Appeals has been inconsistent, it has applied that rule to BZAs, stating that a BZA "generally has no inherent power to review and vacate, rescind or alter its decision after it has been made" because "[t]he powers of the BZA are strictly limited to those granted by its authorizing statute." *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1014

---

[4] *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 939 (Ind. 1993) ("It is elementary that the authority of the State to engage in administrative action is limited to that which is granted it by statute and that administrative action within such limitation has the force of law."); *Sowers v. Covered Bridge Tree Serv.*, 621 N.E.2d 1111, 1112 (Ind. 1993) ("[W]e note that as an administrative body the Workers Compensation Board has only that authority conferred upon it by the statute which created it. Its authority is not expanded by the 'common law.'" (quotations omitted)); *Ind. Air Pollution Control Bd. v. City of Richmond*, 457 N.E.2d 204, 207 (Ind. 1983) ("Under Indiana law an administrative agency has only such power as its creating statute has bestowed upon it."); *Chicago & E.I.R. Co. v. Pub. Serv. Comm'n*, 49 N.E.2d 341, 341 (Ind. 1943) ("The Public Service Commission derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none.").

(Ind. Ct. App. 1996); *see also Burcham v. Metro. Bd. of Zoning Appeals*, 883 N.E.2d 204, 215 (Ind. Ct. App. 2008) (quoting *Schlehuser* for the same principle); *Brownsburg Conservation Club, Inc. v. Hendricks Cnty. Bd. of Zoning Appeals*, 697 N.E.2d 975, 977 (Ind. Ct. App. 1998) ("[A] zoning board has no inherent authority to revoke a variance once issued."); *accord* 4 Am. Law Zoning § 40:51 (5th ed. 2025) ("Absent a statute or ordinance which authorizes a board of appeals to rehear an application for relief, many courts hold that a board is without general authority to rehear and reconsider a matter which it has decided."). But over time, some Court of Appeals cases have carved out an exception, which we discuss next.

## II.   We disapprove of the "error of law" exception some Court of Appeals cases have recognized.

A conflicting line of Court of Appeals cases emerged recognizing an "error of law" exception: "[w]hen an administrative entity recognizes its own error of law, it may correct that error." *Adkins v. City of Tell City*, 625 N.E.2d 1298, 1302 (Ind. Ct. App. 1993). This exception derives from misplaced reliance on inapplicable precedent.

The Court of Appeals first recognized this exception in *Adkins*. *Id.* The Tell City Board of Public Works and Safety voted unanimously to dismiss police officer Adkins for misconduct while on duty but rescinded that decision within ten days due to its own failure to follow the correct procedure for dismissing a public employee. *Id.* The Board then followed the proper procedure and dismissed Adkins again. *Id.*

Adkins challenged the Board's authority to rescind its own decision because he preferred judicial review of the first, procedurally-improper order rather than the second, procedurally-proper one. But the Court of Appeals rejected that challenge. One reason was, essentially, that any error was harmless. "If Adkins had appealed the Board's initial dismissal, and the trial court had found that the Board's procedures were deficient, the trial court could have done nothing but reverse the dismissal and remand to the Board for a proper hearing," which the Board had by then already held. *Id.* at 1303. So "[o]nce the Board rescinded its dismissal,

Adkins had nothing about which to complain." *Id.* We have no concern with that reasoning.

The Court of Appeals had another reason, though, which was mistaken. It found "[t]he record unquestionably shows that the Board recognized that it failed to follow proper procedure," and that "[f]ailure to comply with required procedure was an error of law the Board was entitled to correct on its own." *Id.* The court cited two cases for the rule that "[w]hen an administrative entity recognizes its own error of law, it may correct that error." *Id.* But we find those cases inapposite.

The first case, *Robbins v. National Veneer & Lumber Co.*, 88 N.E.2d 773 (Ind. App. 1949), dealt with the revocation of an award granted by the Industrial Board, the agency then responsible for workers' compensation claims. That revocation authority was granted by statute, though, not the common law. The Court of Appeals had previously recognized a version of the "error of law" exception specific to the Industrial Board due to the language in the Board's enabling statutes. *See Homan v. Belleville Lumber & Supply Co.*, 8 N.E.2d 127, 132 (Ind. App. 1937) ("We believe it was the intention of the legislature . . . as gathered from the act as a whole, that matters of this kind are incidental to the administration of this act and should be passed upon by the board."). And the *Robbins* court reaffirmed that rule, specifically pointing out the statutory basis for the Board's authority to revoke a previous order. *Robbins*, 88 N.E.2d at 775 (noting the Board had a kind of continuing jurisdiction over the award because "[w]hen the board entered an award, it still had certain statutory duties to perform").

The second case, *Geiger v. Miss. State Bd. of Cosmetology*, 151 So. 2d 189, 191 (Miss. 1963), was based on Mississippi law. In Mississippi, "administrative agencies may reconsider and modify their determinations or correct errors on the ground of fraud or imposition, illegality, irregularity in vital matters, mistake, misconception of facts, erroneous conclusion of law, surprise or inadvertence." *Id.* Mississippi's broad grant of extra-statutory power does not inform—and in fact contradicts—Indiana law, which rejects any argument that an agency has inherent or common law power beyond what is granted in its enabling statute.

After *Adkins*, two more cases recognized the "error of law" exception, including one that specifically applied the rule to a BZA's decision. *See State ex rel. ANR Pipeline Co. v. Ind. Dep't of State Revenue*, 672 N.E.2d 91 (Ind. Tax Ct. 1996); *Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881 (Ind. Ct. App. 2019). Both recognized the general rule that "administrative bodies may not usually rescind their final determination absent some statutory provision granting that authority." *ANR Pipeline Co.*, 672 N.E.2d at 94; *Essroc Cement Corp.*, 122 N.E.3d at 896 ("[U]nless the legislature has given clear authority to revoke final determinations, administrative bodies do not have the power to change their minds after a final determination."). And both recognized an exception that "[w]hen an administrative agency recognizes its own error of law, it may correct that error." *ANR Pipeline Co.*, 672 N.E.2d at 94; *Essroc Cement Corp.*, 122 N.E.3d at 896. But the *ANR* opinion cited only *Adkins* for the exception, and the *Essroc* opinion cited only *ANR*. *ANR Pipeline Co.*, 672 N.E.2d at 94; *Essroc Cement Corp.*, 122 N.E.3d at 896.

Neither case cites any authority justifying a deviation from our Court's precedents disclaiming any inherent or common law authority for administrative bodies to reconsider final decisions. Nor do those cases or *Adkins* confront the foundational principles underlying our precedents—administrative bodies are creatures of statute; the legislature explicitly directs when those bodies have the authority to reconsider their final decisions; and we infer from the legislature's silence that a body does not have that power. We therefore disapprove of the exception recognized in *Essroc*, *ANR Pipeline*, and *Adkins*, and we reaffirm our precedent that there is no common law or inherent authority for an administrative body to reconsider its final order based on an error of law.

## III. The BZA here had no authority to reconsider the conditional use permit.

Having rejected the "error of law" line of cases, we look to the BZA's enabling statutes to see whether those laws authorize any reconsideration power. We conclude they do not.

BZAs derive their authority from a series of statutes under Title 36, Article 7, Chapter 4 of the Indiana Code. *See generally* I.C. §§ 36-7-4-900 to 36-7-4-924 (collectively, "the 900 series" governing the board's powers and operation); I.C. §§ 36-7-4-1000 to 36-7-4-1019 (collectively, the "1000 series" governing remedies and enforcement); I.C. §§ 36-7-4-1600 to 36-7-4-1616 (collectively, the "1600 series" governing judicial review). A review of those statutes reveals no contemplation, let alone a grant, of BZA authority to rescind a decision once it has been made. The BZA has conceded as much throughout this litigation—including in oral argument before this Court—by acknowledging that the only authority it could rely on was the common law.

Yet the BZA asserted an eleventh-hour claim that one of the statutes providing for judicial review of BZA decisions constitutes "legislative acknowledgement of a board of zoning appeals' inherent authority to revoke conditional use decisions based on legal error." Appellant's Resp. to Amicus Curiae at 12. The statute to which the BZA points allows a person pursuing judicial review of a BZA decision to seek a stay of that decision pending the court's review, including where the review petition "concerns a revocation or suspension of a previously approved variance, exception, or use." I.C. § 36-7-4-1609(b). An administrative body may condition its approval, and the power that review statute refers to is the agency's statutory power to take remedial or enforcement action to enforce those conditions, including by revoking a permit that was subject to the unmet conditions. I.C. § 36-7-4-918.4; *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1014 (Ind. Ct. App. 1996) ("The authority to revoke a variance is not inherent in the BZA's statutory powers to grant and deny a variance. However, the BZA is expressly authorized to impose reasonable conditions when it approves a variance. It is implicit that when a variance is issued subject to conditions of approval, the variance can be revoked if the conditions are not met." (citations omitted)); *Brownsburg Conservation Club, Inc. v. Hendricks Cnty. Bd. of Zoning Appeals*, 697 N.E.2d 975, 977 (Ind. Ct. App. 1998) (recognizing the same). But that is not an extra-statutory, common law power, and it is not the power to reconsider a final decision that is at issue here.

The General Assembly knows how to grant reconsideration power. For example, the Administrative Orders and Procedures Act (AOPA) grants a limited power for an agency to reconsider final orders up to thirty days after the order has been issued, or until another agency or court assumes jurisdiction. I.C. § 4-21.5-3-31(a). But BZAs are not subject to AOPA. *Howard v. Allen Cnty. Bd. of Zoning Appeals*, 991 N.E.2d 128, 130 (Ind. Ct. App. 2013); *see also Senter v. Kosciusko Cnty. Bd. of Zoning Appeals*, 251 N.E.3d 584, 587 n.5 (Ind. Ct. App. 2025). And even if they were, AOPA's reconsideration power is much narrower than the power the BZA claims here, which is the power to reconsider a final order months later while the order is already subject to pending judicial review proceedings.

Of course, the legislature is free to add a statutory provision authorizing BZAs to reconsider their final orders. Until that time, however, we decline to endorse any extension of the BZA's authority beyond what is explicitly allowed in its governing statutes.

Because the Monroe County BZA has no statutory authority allowing for reconsideration or revocation of a final decision, it acted outside the scope of its power in revoking Bedford Recycling's conditional use permit.[5]

# Conclusion

For these reasons, we affirm the trial court's order vacating the BZA's revocation order and reinstating Bedford Recycling's conditional use permit.

---

[5] We need not consider the legality of the permit's grant in the first place, as that issue remains before the trial court in Republic Services' pending judicial review action. This appeal also does not involve an administrative body's claimed authority (1) to correct clerical errors, *Burcham v. Metro. Bd. of Zoning Appeals*, 883 N.E.2d 204, 215–16 (Ind. Ct. App. 2008); (2) to rehear a matter where circumstances have changed since the decision was rendered, which in some instances may constitute a new application for relief rather than a reconsideration, 4 Am. Law Zoning § 40:49 (5th ed. 2025); or (3) to make changes to its final order before a petition for judicial review is filed or the time to seek judicial review has expired.

Rush, C.J., and Massa and Slaughter, JJ., concur.

Goff, J., dissents in part and concurs in the judgment with separate opinion.

ATTORNEYS FOR APPELLANT

David B. Schilling

Justin D. Roddye

Monroe County Legal Department

Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Dustin L. Plummer

Patrick A. Ziepolt

Mallor Grodner Plummer LLP

Bloomington, Indiana

ATTORNEYS FOR *AMICI CURIAE* ASSOCIATION OF INDIANA
COUNTIES, ACCELERATE INDIANA MUNICIPALITIES, AND
INDIANA MUNICIPAL LAWYERS ASSOCIATION

Thomas Kennedy Downs

Karen L. Arland

Kennedy Downs & Arland, PC

Carmel, Indiana

Becca McCuaig

Accelerate Indiana Municipalities

Indianapolis, Indiana

ATTORNEYS FOR *AMICI CURIAE* INDIANA BUILDERS
ASSOCIATION & ASSOCIATED BUILDERS AND CONTRACTORS
OF INDIANA/KENTUCKY

Thomas F. Bedsole

Maggie L. Smith

Frost Brown Todd LLP

Indianapolis, Indiana

ATTORNEYS FOR *AMICUS CURIAE* PACIFIC LEGAL
FOUNDATION
Allison D. Daniel
Frank D. Garrison
Pacific Legal Foundation
Arlington, Virginia

ATTORNEYS FOR *AMICUS CURIAE* INSTITUTE FOR JUSTICE
Marie Miller
Institute for Justice
Phoenix, Arizona

Caroline Grace Brothers
Institute for Justice
Arlington, Virgina

Ari Bargil
Institute for Justice
Miami, Florida

## Goff, J., dissenting in part and concurring in the judgment.

Bedford Recycling (or just Bedford) owns land in Monroe County and would like to build a facility to collect and sort scrap metal that will later be transported off-site for recycling. The Monroe County Zoning Ordinance establishes eighteen zoning classifications. Some land uses for a zone are presumptively allowed. Other land uses are allowed if the Board of Zoning Appeals (BZA) grants a conditional-use permit and specific conditions are met. Bedford's property is zoned for mineral extraction, and scrap-metal recycling is not a presumptive use. So, Bedford applied for a conditional-use permit as a "Central Garbage/Rubbish Collection Facility." Appellant's App. Vol. 3, p. 30. Such facilities are contracted to remove "*solid waste*" and transport it to landfills or other designated facilities. *Id.*

The BZA held a hearing on September 1, 2021, to consider Bedford's application. Bedford's representative acknowledged that "the facility that [Bedford is] proposing here *doesn't handle solid waste*. What it does is handle ferrous and nonferrous metals for recycling. It is essentially a scrap yard." *Id.* at 52 (emphasis added). The BZA granted the conditional-use permit. On October 1, 2021, Republic Services—a competitor which owns property near Bedford's property—petitioned for judicial review of the BZA's decision. *See* Petition for Judicial Review at 1–2, *Republic Servs., Inc. v. Monroe Cnty. Bd. of Zoning Appeals and Bedford Recycling, Inc.*, No. 53C06-2110-MI-2052 (Monroe Cir. Ct. Oct. 1, 2021). Republic claimed that Bedford hadn't satisfied the requirements for the conditional-use permit.

The BZA called a special meeting in December 2021 to discuss appropriate action after Republic initiated judicial review. The BZA voted to hold a hearing to determine whether the BZA erred *as a matter of law* when it granted the permit because the proposed facility does not handle solid waste. The trial court in the Republic Services case stayed proceedings. On August 3, 2022, the BZA revoked the permit and entered written findings and conclusions, stating it could revoke the permit because it made an error of law. *See Essroc Cement Corp. v. Clark Cnty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 896 (Ind. Ct. App. 2019) (holding that an

administrative agency generally cannot change a final decision but may correct an error of law), *trans. denied*.

With Republic Services' petition for judicial review still pending, Bedford filed its own petition for judicial review in September 2022, arguing that the BZA could not revoke the permit. *See* Petition for Judicial Review at 1, *Bedford Recycling, Inc. v. Monroe Cnty. Bd. of Zoning Appeals*, No. 53C06-2209-MI-1773 (Monroe Cir. Ct. Sep. 2, 2022). The trial court agreed and reinstated the permit, concluding that the BZA premised its decision on "mistakes of fact and a change of reasoning" rather than an error of law. Appellant's App. Vol. 2, pp. 43–44. The Court of Appeals reversed, concluding that the BZA's written findings and conclusions show it made an error of law, so it could revoke the permit. *Monroe Cnty. Bd. of Zoning Appeals v. Bedford Recycling, Inc.*, 241 N.E.3d 1144, 1146–47 (Ind. Ct. App. 2024).

The Court affirms the trial court's reinstatement of the permit, albeit because the "BZA has no inherent or common law authority" to correct its errors of law. *Ante*, at 2. I respectfully dissent as to the Court's holding that an agency cannot correct its own errors of law without explicit statutory authority. But because the BZA corrected its error of law after an unreasonable amount of time, I concur in the Court's decision to reinstate the permit.

## I. Agencies can revisit prior decisions to correct an error of law.

"[A]dministrative agencies are creatures of statute," so they generally only have "such authority as is conferred upon them by statutory enactment." *Vehslage v. Rose Acre Farms, Inc.*, 474 N.E.2d 1029, 1033 (Ind. Ct. App. 1985). Therefore, in general, the General Assembly must give an agency statutory authority to revoke its decisions. *See, e.g.*, Ind. Code § 4-21.5-3-31(a) (giving agencies the "jurisdiction to modify a final order under this section" of the Administrative Orders and Procedures Act (AOPA)). And here, neither AOPA nor any other statute gives the BZA explicit

authority to revoke its prior decisions. *See Burcham v. Metro. Bd. of Zoning Appeals Div. I of Marion Cnty.*, 883 N.E.2d 204, 215 (Ind. Ct. App. 2008).

But the Court of Appeals has recognized exceptions to the general rule that an agency cannot revoke a final action without express statutory authority. For instance, an agency can revoke prior approvals where the approval was subject to express conditions and those conditions were not met. *See Brownsburg Conservation Club, Inc. v. Hendricks Cnty. Bd. of Zoning Appeals*, 697 N.E.2d 975, 977 (Ind. Ct. App. 1998). An agency can also correct clerical errors that inadvertently appear in its orders and decisions. *See Burcham*, 883 N.E.2d at 215–16 (internal citation omitted). And "when an administrative agency recognizes its own *error of law*, it may correct that error." *Essroc Cement Corp.*, 122 N.E.3d at 896 (internal citation and quotation marks omitted) (emphasis added). An error of law occurs when "a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect." *Id.* (internal citation and quotation marks omitted). "[Changes] in reasoning [do] not constitute an error of law and [do] not justify the alteration of a final administrative decision." *Id.* at 897 (citation and emphasis omitted).

I would adopt the error-of-law exception recognized by the Court of Appeals. Like the inherent authority trial courts may exercise to reconsider certain orders, the error-of-law exception gives administrative agencies the ability to reconsider erroneous decisions. *See State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994) (stressing that a "court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," especially in "extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice") (internal citation and quotation marks omitted). And other jurisdictions give agencies broad inherent authority to revisit decisions. For instance, the Fifth Circuit has held that the Administrative Review Board can reconsider an attorney's fee award because "it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions." *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002). In *Tokyo Kikai Seisakusho, Ltd. v. United States*, the Federal Circuit Court of Appeals held that the Department of Commerce had "inherent authority to reconsider" a prior review tainted by fraud. 529 F.3d 1352, 1356 (Fed. Cir.

2008). And in Wisconsin, "an administrative agency has the power to reconsider decisions since the power to decide carried with it the power to reconsider." *See Schoen v. Bd. of Fire and Police Comm'rs of City of Milwaukee*, 873 N.W.2d 232, 238 (Wis. Ct. App. 2015).

I would adopt the error-of-law exception because it is relatively narrow yet promotes judicial economy by letting agencies correct legal errors without the need for judicial review. The error-of-law exception is also an important tool for agencies when judicial review is unavailable. For example, had the BZA initially denied the permit because of a legal error, Bedford could seek judicial review to correct that legal error. But here, the BZA granted the permit because of a legal error, so Bedford had no reason to seek judicial review until it was later revoked. And the BZA itself has no explicit authority to initiate judicial review of its own decisions when it makes a legal error, *see* I.C. § 36-7-4-1603, so the error-of-law exception allows the agency to correct any such error, especially when there is no third party with standing and interests aligned with the BZA to seek judicial review. Therefore, the error-of-law exception ultimately promotes confidence that administrative proceedings will get to the right results.[1]

## II. The error-of-law exception does not apply here because the BZA revoked the permit after an unreasonable amount of time.

But to promote the finality of administrative decisions, I would only apply the error-of-law exception within a *reasonable time* after an agency decision was made. Finality "provides certainty and stability" and "protects the interests of parties by enabling closure." *Auto. Fin. Corp. v. Liu*, 250

---

[1] The Court notes that this case does not involve an agency's claimed authority "to correct clerical errors," "to rehear a matter where circumstances have changed since the decision was rendered," or "to make changes to its final order before a petition for judicial review is filed or the time to seek judicial review has expired." *Ante*, at 13 n.5 (internal citations omitted). But the Court's decision now leaves unclear if agencies have *any* inherent authority to correct *any* errors, burdening agencies and harming the integrity of their proceedings.

N.E.3d 406, 408 (Ind. 2025). A reasonable time for an agency to reconsider a decision is "the time allowed by the controlling statute for [judicial] review." *Dale Bland Trucking, Inc. v. Calcar Quarries, Inc.*, 417 N.E.2d 1157, 1160 (Ind. Ct. App. 1981). Once the time for judicial review has expired, all parties can reasonably depend on the agency decision staying final.

Here, the BZA's decision to revoke the permit eleven months after granting it was an unreasonable amount of time. The timeframe permitted for judicial review of the BZA's decision here was "not later than thirty (30) days after the date of the [original] zoning decision." *See* I.C. § 36-7-4-1605. After thirty days, Bedford should be able to reasonably depend on the permit. According to Bedford, tens of thousands of hours have been spent on the project, and revoking the permit after eleven months creates uncertainty in planning.[2]

# Conclusion

Though I concur in the Court's conclusion that the BZA here could not revoke Bedford's permit, I respectfully dissent from the Court's conclusion that agencies do not have inherent authority to correct their legal errors. Because the error-of-law exception promotes the integrity of administrative proceedings and judicial efficiency, I would hold that administrative agencies can revisit prior decisions to correct an error of law within a reasonable amount of time.

---

[2] The Court of Appeals concluded that Bedford waived the issue of whether the BZA's revocation was timely. *Monroe Cnty. Bd. Zoning Appeals v. Bedford Recycling, Inc.*, 241 N.E.3d 1144, 1153 (Ind. Ct. App. 2024). But Bedford did argue to the BZA that "reversing the decision at this point in time over 300 days after the initial grant is going to create a lot of uncertainty." Appellant's App. Vol. 3, p. 102. Bedford also raised the issue at oral argument in front of the Court of Appeals and raised the issue in its petition to transfer, giving the BZA an opportunity to respond to the argument. Court of Appeals Oral Argument at 24:37–24:43; Pet. to Trans. at 18–19. Considering the important property interests at stake, I would address the issue of timeliness.